# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., and PETER DEUTSCH,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GENTNER DRUMMOND, *et al.***<br><br>**Defendants.** | **Case No. 5:26-cv-00582-R** |

**DEFENDANT ATTORNEY GENERAL GENTNER DRUMMOND'S MOTION TO DISMISS, WITH BRIEF IN SUPPORT**

Defendant Gentner F. Drummond, in his official capacity as Attorney General of Oklahoma (the "Attorney General"), hereby moves this Court to dismiss all claims against him and to remove his name from the caption of this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] The Attorney General further reserves the right to seek attorneys' fees and costs incurred in bringing this motion pursuant to 42 U.S.C. § 1988.

Despite being named as the lead defendant, the Attorney General has no role in the administration of the Oklahoma Charter Schools Act ("OCSA"), the processing or denial of charter school applications, or the enforcement of the OCSA's nonsectarian requirement.

[1] Nothing in this motion should be construed as a waiver of the Attorney General's authority to represent the interests of the State of Oklahoma and its citizens in matters arising under the Oklahoma Charter Schools Act or any other provision of Oklahoma law. The Attorney General expressly reserves the right to appear, intervene, or participate in any proceeding in which the interests of the State or its people are at issue. *See* OKLA. STAT. tit. 74, § 18b(A)(3); *see also Cherokee Nation v. United States Dep't of the Interior*, 2025 OK 4, ¶ 55, 564 P.3d 58, 74 (holding that the Attorney General "may act independently…, and represent such segment of the State's interest not represented by" other representatives of the State).

Those responsibilities belong exclusively to the Oklahoma Statewide Charter School Board and its staff (collectively, the "Board")—the very entities that denied Plaintiffs' application and that are separately named as defendants in this action. Naming the Attorney General as a defendant in this case was a transparent attempt to generate a headline, not to identify a proper party, and the Complaint should be dismissed accordingly.

## BACKGROUND

Plaintiff National Ben Gamla Jewish Charter School Foundation, Inc. ("Ben Gamla") is an Oklahoma non-profit corporation that sought to establish a sectarian virtual charter school in Oklahoma. Dkt. 1, ¶¶ 12, 63, 73. In December 2025, Ben Gamla submitted a charter school application to the Board. *Id.* ¶ 65. After a hearing, the Board voted unanimously to deny the application on February 9, 2026. Dkt. 1, ¶¶ 86, 94. After Ben Gamla submitted a revised application, the Board again voted unanimously to deny the application on March 9, 2026. *Id.* ¶ 103.

Critically, the Attorney General played no role in the Board's denial of Ben Gamla's application. To the contrary, on March 11, 2026, the Attorney General was forced to file a Petition for Writ of Mandamus against the Board in Oklahoma County District Court, seeking to compel the Board to discharge its independent statutory duty to identify all valid, non-constitutional grounds for rejection of Ben Gamla's application. *See Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Cnty. Dist. Ct. filed Mar. 11, 2026); dkt. 1, ¶ 105. In that petition, the Attorney General expressly stated that he "takes **no position** in this proceeding on the constitutional or statutory questions" resolved by the Oklahoma Supreme Court regarding the nonsectarian requirement. Dkt. 1, ¶ 106. That the Attorney General had

to sue the Board to compel compliance with its own statutory obligations confirms that the Board—not the Attorney General—administers the OCSA and that the Attorney General exercises no control over the Board's application decisions.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review.

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," dismissal is required. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Where a plaintiff sues the wrong official and the defendant has no connection to the challenged conduct, dismissal is required.

### II. The Attorney General Has No Connection to the Enforcement of the OCSA's Nonsectarian Requirement and Is Not a Proper Defendant.

Under *Ex parte Young*, 209 U.S. 123 (1908), a suit may proceed against a state officer in his official capacity only if the officer has "some connection with the enforcement of the act." *Id.* at 157. Absent such a connection, the suit "is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party," which sovereign immunity forbids. *Id.* An officer need not have a "special connection" to the statute, but the officer "must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 157).

Courts consistently reject attempts to apply *Ex parte Young* to state officials based solely on a generalized duty to enforce the law. *See, e.g., Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009) ("[T]he Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce."); *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003); *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021); *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) ("[W]here the challenged law 'makes clear that another agency is the agency responsible for the law's administration and enforcement,' only that agency is a proper defendant under *Ex parte Young.*").

The Tenth Circuit's analysis in *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742 (10th Cir. 2010), is directly on point. There, the court examined whether the Oklahoma Attorney General had a sufficient connection to specific provisions of the Oklahoma Taxpayer and Citizen Protection Act. The court found the Attorney General was a proper defendant as to Section 7(B) because he had specific duties related to that provision—drafting contracts for state officials and bringing civil actions against violators. *Id.* at 760. But as to Section 7(C)—the anti-discrimination provision—the court held that the Attorney General was *not* a proper defendant because the plaintiffs "do not cite to any Oklahoma law authorizing the Attorney General to enforce that provision." *Id.* The court dismissed the Attorney General from the Section 7(C) challenge entirely because the Oklahoma Human Rights Commission, not the Attorney General, was charged with enforcing that provision. *Id.*

This case presents an even clearer example than *Edmondson*'s Section 7(C) claim. The OCSA vests authority over charter school applications exclusively with the Board. OKLA.

STAT. tit. 70, § 3-134(C) (Board may sponsor virtual charter schools); *id.* § 3-134(E) (Board reviews and acts on applications). The Board—not the Attorney General—reviews applications, conducts capacity interviews, votes on applications, and issues formal denial letters. *See* Dkt. 1, ¶¶ 78–84, 99–104. The Board's Executive Director, Chairman, members, and Director of School Performance are all separately named as defendants. *Id.* ¶¶ 15–25.

Plaintiffs do not—and cannot—cite any provision of the OCSA that authorizes the Attorney General to approve or deny charter school applications, enforce the nonsectarian requirement against applicants, or take any action against a charter school applicant for being religious. The Attorney General's general authority as "chief law officer of the State," OKLA. STAT. tit. 74, § 18b(A), and his authority to "initiate or appear in any action in which the interests of the state or the people of the state are at issue," *id.* § 18b(A)(3), do not constitute the kind of specific enforcement connection required by *Ex parte Young* and *Edmondson*.

The Attorney General's recently filed mandamus petition against the Board underscores this point. Far from controlling the Board or enforcing the nonsectarian requirement against charter school applicants, the Attorney General was forced to petition a state court to compel the Board to discharge its own statutory obligations. An official who must resort to mandamus to influence the Board's conduct cannot plausibly be characterized as "enforcing" the statute the Board administers.[2]

---

[2] Indeed, the fact that the Attorney General previously had to file a lawsuit against the Board's predecessor related to the same constitutional provision further highlights the absurdity of naming him as a defendant in this suit. *See Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 2024 OK 53, 558 P.3d 1.

As the Third Circuit cautioned, permitting a suit against high-ranking state officials based solely on generalized enforcement authority would mean that "each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it." *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112–13 (3d Cir. 1993). That is precisely the result Plaintiffs seek here, and it should be rejected.

### III. Plaintiffs Also Lack Article III Standing to Maintain Claims Against the Attorney General.

Independent of the *Ex parte Young* analysis, Plaintiffs' claims against the Attorney General should be dismissed because Plaintiffs cannot satisfy the redressability requirement of Article III standing as to him. "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Rather, "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.* Accordingly, "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). A plaintiff's "injury resulting from the conduct of one defendant should [not] have any bearing on her Article III standing to sue other defendants." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65–66 (2d Cir. 2012); *see also Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1048 (D.N.M. 2020) (Browning, J.) (holding that "the plaintiff must demonstrate standing against each defendant" and dismissing one defendant for lack of standing while allowing identical § 1983 claims to proceed against others); *Rolaff v. Farmers Ins. Co.*, No. CIV-19-0689-J, 2020 WL 4939172, at *4 (W.D. Okla. Mar. 19, 2020) (Jones, J.) (dismissing defendants where plaintiffs lacked standing to assert claims against them).

Plaintiffs' alleged injury—the denial of Ben Gamla's charter school application—was inflicted entirely by the Board, not the Attorney General. It was the Board that reviewed the application and voted unanimously, twice, to deny it. Dkt. 1, ¶¶ 86, 94, 103. An injunction issued solely against the Attorney General would not reverse the Board's decision, would not compel the Board to approve the application, and would not otherwise alter the Board's independent exercise of its statutory authority over charter school applications. OKLA. STAT. tit. 70, §§ 3-132.2; 3-134(E)(3). Put simply, an order directed at the Attorney General alone would accomplish nothing to ameliorate Plaintiffs' injuries. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (requiring, as an "irreducible constitutional minimum" of standing, that the plaintiff's injury be "likely" to be "redressed by a favorable decision").

This is not a case in which the Attorney General has any authority over the Board's decisions. Unlike the Governor in *Hernandez*, who could direct her subordinate to amend the challenged policy and thereby redress the plaintiffs' injuries, 499 F. Supp. 3d at 1053–54, the Attorney General has no supervisory authority over the Board and no ability to compel the Board to approve a charter school application. OKLA. STAT. tit. 70, § 3-132.1(A) (identifying the Governor, President Pro Tempore of the Senate, Speaker of the House of Representatives, Superintendent of Public Instruction, and State Auditor and Inspector as the only Oklahoma officers with appointment or removal power over Board members). To the contrary, the Attorney General was forced to file a mandamus petition in state court merely to compel the Board to follow its own statutory obligations—confirming that the Attorney General cannot direct the Board's conduct and that any relief against him would leave Plaintiffs' injury entirely unredressed. The Board caused the harm, and only a remedy against the Board will redress it.

*See Murthy*, 603 U.S. at 73–74 (finding plaintiffs had "a redressability problem" where enjoining the defendants would not alter the independent actions of the entities that actually caused the injury); *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.").

## IV. The Eleventh Amendment Bars All Claims Against the Attorney General.

Under the Eleventh Amendment, states are generally immune from suits in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974). The *Ex parte Young* exception permits suits against state officers only when the officer has a connection with enforcement of the challenged statute and the plaintiff seeks prospective relief. *Ex parte Young*, 209 U.S. at 155–56; *Edmondson*, 594 F.3d at 760. As demonstrated above, the Attorney General has no enforcement connection to the OCSA's nonsectarian requirement. Because the *Ex parte Young* exception does not apply, the Eleventh Amendment bars all claims against the Attorney General. *See Edmondson*, 594 F.3d at 760 (dismissing Attorney General from claims where he lacked particular duty to enforce challenged provision).

## V. The Court Should Remove the Attorney General's Name from the Caption.

Upon dismissal, the Attorney General respectfully requests that the Court order the caption of this case modified to remove his name. The Attorney General was improperly named as a defendant. He has no role in the administration of the OCSA, no authority to grant or deny charter school applications, and no enforcement connection to the nonsectarian requirement. The proper defendants—the Board and its members—are already parties to this case. Indeed, at the very moment Plaintiffs filed this lawsuit naming the Attorney General as

a defendant for supposedly controlling the Board, the Attorney General was petitioning a state court to compel that same Board to follow the law. Retaining the Attorney General's name in the caption after dismissal would serve no purpose other than to perpetuate the misleading impression that he bears some responsibility for the conduct at issue. The Court should therefore direct that the pleadings be modified accordingly. *See Grider v. City & Cnty. of Denver*, 958 F. Supp. 2d 1262, 1270 (D. Colo. 2013) (upon dismissing claims against one defendant for lack of standing, ordering that "[a]ll future pleadings shall omit reference to the City and County of Denver as a Defendant in this case").

## VI. The Attorney General Reserves the Right to Seek Attorneys' Fees.

Under 42 U.S.C. § 1988(b), a court may award attorneys' fees to a prevailing defendant in a § 1983 action when the plaintiff's claim is "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

The claims against the Attorney General lack legal foundation. Plaintiffs identify no statutory provision vesting the Attorney General with authority to administer or enforce the OCSA's charter school provisions against applicants. The proper defendants are already named. Including the Attorney General serves no legitimate litigation purpose. Therefore, the Attorney General expressly reserves the right to seek attorneys' fees and costs incurred in defending against claims that should never have been brought against him.

## CONCLUSION

For the foregoing reasons, the Attorney General respectfully requests that this Court: (1) dismiss all claims against the Attorney General under Fed. R. Civ. P. 12(b)(1) and 12(b)(6);

(2) order the caption modified to remove the Attorney General's name; and (3) grant all other relief as the Court deems appropriate.

Respectfully Submitted,

s/Garry M. Gaskins, II

GARRY M. GASKINS, II, OBA NO. 20212
*Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Direct: (405) 521-3921
Garry.Gaskins@oag.ok.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Garry M. Gaskins, II
Garry M. Gaskins, II