# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. CIV-26-582-R** |
| **REBECCA WILKINSON, in her official capacity as Executive Director of the Statewide Charter School Board, et al.,** | ) | |
| **Defendants.** | ) | |

## ORDER

The National Ben Gamla Jewish Charter School Foundation Inc. and its founder, Peter Deutsch, seek a declaration that a provision of Oklahoma state law requiring charter schools to be nonsectarian is unconstitutional. As defendants, Plaintiffs named the individual members of the Oklahoma Statewide Charter School Board in their official capacities and the Attorney General in his official capacity. Now before the Court is a Motion to Dismiss [Doc. No. 52] filed by the Attorney General contending that he is not a proper defendant because he has no role in the enforcement of the challenged provision. Plaintiffs responded in opposition [Doc. No. 81] and the Attorney General replied [Doc. No. 87]. For the reasons explained below, the Attorney General's Motion is granted, and he will be removed from the caption of this case.

***Relevant Background***

The Oklahoma Charter Schools Act provides for the establishment and operation of charter schools that are sponsored by various entities. Okla. Stat. tit. 70, § 30-132(A). The Act vests the Statewide Charter School Board with the "sole authority to sponsor" virtual charter schools, *id.* at § 3-132.1(A), requires the Board to establish procedures for approving or disapproving virtual charter school applications, *id.* at § 3-132.2(3), and empowers the Board to "accept or reject sponsorship of the virtual charter school" after receipt of an application. *Id.* at § 3-134(E)(3).

Consistent with these procedures, Plaintiffs submitted a charter school application to the Board seeking to establish a virtual charter school. The proposed charter school would have a "distinctive religious mission" that would include "instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices." Compl. [Doc. No. 1] ¶¶ 75. The Board denied the application based on a provision of the Oklahoma Charter Schools Act that requires a charter school to "be nonsectarian in its programs, admission policies, employment practices, and all other operations." Okla. Stat. tit. 70, § 3-136(A)(2). The Board also relied on a recent Oklahoma Supreme Court decision finding that the "establishment of a religious charter school violates Oklahoma statutes, the Oklahoma Constitution, and the Establishment Clause." *Drummond v. Oklahoma Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 15 (Okla. 2024) (affirmed by an equally divided Supreme Court in *Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165, 166 (2025)).

Following the denial of the application, Plaintiffs initiated this lawsuit asserting claims under the Free Exercise Clause of the First Amendment and the Equal Protection

Clause of the Fourteenth Amendment. They seek a declaration that the nonsectarian requirement is unconstitutional and an injunction prohibiting Defendants from enforcing the requirement or otherwise denying Plaintiffs' eligibility to obtain a charter based on their religious identity. The Attorney General contends that he is not a proper defendant under *Ex Parte Young*, 209 U.S. 123 (1908), and is immune from suit under the Eleventh Amendment.

***Discussion***

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cnty. Rural Water Dist. No. 2. v. Grand River Dam Auth*., 577 F.3d 1255, 1258 (10th Cir. 2009). The immunity "extends to 'suit[s] against a state official in his or her official capacity' because such suits are 'no different from a suit against the State itself.'" *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

*Ex parte Young* provides an exception to this rule. Under this doctrine, "a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Hendrickson*, 992 F.3d at 965. "Before this exception applies, however, the state official, by virtue of his office, 'must have some connection with the enforcement' of the challenged law about which plaintiff complains." *Eaves v. Polis*, 167 F.4th 1304, 1313 (10th Cir. 2026) (quoting *Ex parte Young*, 209 U.S. at 157). "Though the official need not 'have a special connection to the unconstitutional act or conduct,' they must 'have a particular duty to

enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)). A "'generalized duty to enforce state law'" is, standing alone, insufficient to subject a state official to suit. *Hendrickson*, 992 F.3d at 967 (quoting *Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009).

Here, Plaintiffs are challenging the nonsectarian requirement contained in the Oklahoma Charter Schools Act, but the Attorney General does not have any particular duty to enforce this provision. The Oklahoma Charter Schools Act empowers the Board, not the Attorney General, to deny virtual charter school applications. The Board is therefore vested with the power to enforce the nonsectarian requirement, and the Board did so in this case. The Attorney General's authority to "[t]o initiate or appear in any action in which the interests of the state or the people of the state are at issue" is insufficient to subject to him to suit where, as here, the challenged statute vests enforcement authority in a separate entity. Okla. Stat. tit. 74, § 18b(A)(3)

*Hendrickson*, 992 F.3d at 956, involved a similar scenario. There, a state employee sued his former union, the governor, and the attorney general seeking a declaration that a statute authorizing the union to serve as his exclusive representative violated his First Amendment rights. The statute placed the power to enforce the exclusive representation provision in an independent board whose members could not be removed by the governor. *Id.* at 966. Because the statute specifically vested the power to enforce the challenged provision in "a body independent of the Governor and the Attorney General," the Tenth

Circuit concluded that the governor and attorney general were not proper parties under *Ex parte Young*. *Id.* at 966-968. Likewise, here, the Oklahoma Charter Schools Act vests the power to enforce the nonsectarian requirement in a separate Board and Plaintiffs have not shown that the Attorney General exercises any authority over the Board.

Resisting this conclusion, Plaintiffs note that the Attorney General has twice sought mandamus relief against the Board. *See Drummond*, 558 P.3d at 6 (seeking writ of mandamus directing the Board to rescind a charter school contract for a religious school); *Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Cnty. Dis. Ct. March 11, 2026) (seeking writ of mandamus directing the Board to identify all non-constitutional grounds for rejection of Ben Gamla's application). But contrary to Plaintiffs' characterization, the Attorney General's resort to seeking mandamus relief suggests a lack of authority over the Board and an inability to enforce the Oklahoma Charter Schools Act. Because the Attorney General "does not enforce or give effect" to the nonsectarian requirement, he "cannot be named as a defendant in this case under the *Ex parte Young* exception to Eleventh Amendment immunity." *Free Speech Coal.*, 119 F.4th at 738-740 (10th Cir. 2024) (dismissing state attorney general because the challenged statute placed enforcement authority with private actors and the attorney general lacked power to direct their actions); *see also Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("But when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law.").

The two primary cases cited by Plaintiffs do not dictate a different result. Plaintiffs first cite *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), in support of their argument that the Attorney General's ability and willingness to bring lawsuits against the Board demonstrates a practice of enforcing the statute. In *Kitchen*, 755 F.3d at 1200, the Tenth Circuit considered whether the state attorney general and governor were proper parties to an action by several Utah residents challenging a state law banning same-sex marriage. State law also provided that any county clerk that knowingly issued a marriage license for a prohibited marriage was guilty of a misdemeanor. *Id.* at 1202. The governor and attorney general maintained that they had "ample authority" to ensure the county clerks would comply with the same-sex marriage ban when issuing marriage licenses. *Id.* at 1202. Their position was supported by state law, which charged the governor with supervising ministerial officers and charged the attorney general with supervising the district attorneys that were responsible for filing criminal charges against noncompliant county clerks. *Id.* at 1202-03. The governor had also directed state agencies to consult with the attorney general about their compliance with the marriage ban. *Id.* Against that backdrop, the Tenth Circuit concluded "that the Governor's and the Attorney General's actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials" established "the requisite nexus" between the officials and the challenged law.

Here, in contrast to the record presented in *Kitchen*, Plaintiffs have not shown that the Attorney General has any "supervisory power" over the Board, that the Attorney General is directing or consulting with the Board about its compliance with the challenged law, or that the Attorney General has the authority to compel compliance by filing criminal

charges against the individual Board members. The "nexus" between the challenged law and the state official's actual supervisory power and enforcement authority that was found to be sufficient in *Kitchen* is therefore not present here.

Plaintiffs' second case, *Chamber of Commerce of the United States of America v. Edmondson*, 594 F.3d 742 (10th Cir. 2010), is also distinguishable. In *Edmondson*, the Tenth Circuit concluded that the Oklahoma attorney general was a proper defendant in a lawsuit challenging a provision that required businesses contracting with the state to use a specific employment verification system. *Id.* at 573-57. The Tenth Circuit found that the Attorney General had a particular duty to enforce the provision based on his duty to prepare contracts for state agencies, Okla. Stat. tit. 74, § 18b(A)(7), and his authority to initiate any action in which the interests of the state are at issue, *id.* at § 18b(A)(3). *Edmondson*, 594 F.3d at 757-58. The Tenth Circuit reasoned that an injunction running against the attorney general would prevent him from preparing contracts that required use of the employment verification system and prevent him from bringing lawsuits against businesses or defending state agencies sued by their contractors on the basis of the challenged provision. *Edmondson*, 594 F.3d at 758. These statutory duties, and the attorney general's demonstrated willingness to exercise them, were sufficient to render the attorney general a proper defendant with respect to the employment verification provision. *Id.* at 760.

But notably, the Tenth Circuit reached "the opposite conclusion with regard to" a second provision of the same statute which made it a discriminatory practice to discharge certain employees. The attorney general was not a proper defendant for this claim because the plaintiffs did "not cite to any Oklahoma law authorizing the Attorney General to

enforce that provision." *Id.* at 760. In reaching this conclusion, the Tenth Circuit observed that the attorney general's "duty to prosecute all actions in which the state is interested is not enough to make him a proper defendant in every such action." *Id.* (quotation marks and alterations omitted). Further, this second provision placed investigatory and enforcement power in a separate commission. *Id.* at 754; *see Free Speech Coal,* 119 F.4th at 739, 739 n.9 (emphasizing that the provision in *Edmondson* placed enforcement authority in a separate entity).

Like the plaintiffs in *Edmondson*, Plaintiffs rely on the attorney general's authority to initiate or appear in any action in which the state is interested to establish a connection between the Attorney General and the enforcement of the nonsectarian requirement. Okla. Stat. tit. 74, §18b(A)(3). But the situation here is more like the second provision in *Edmondson* than the first. Unlike the first provision, where the attorney general demonstrated a willingness to bring enforcement actions directly against businesses that violated state law, Plaintiffs have not shown that the attorney general is bringing enforcement actions against charter schools that do not comply with the nonsectarian requirement. More critically, and similar to the second provision in *Edmondson*, state law empowers a separate entity to enforce the challenged provision. Given that statutory scheme, the Attorney General's "duty to prosecute all action in which the state is interested is not enough to make him a proper defendant." *Edmondson*, 594 F.3d at 760 (quotation marks and alterations omitted).

***Conclusion***

As outlined above, Plaintiffs have not established that the Attorney General has a particular duty to enforce the challenged statute such that he is a proper party under *Ex parte Young*.[1] For that reason, the Attorney General's Motion to Dismiss [Doc. No. 52] is GRANTED and he will be removed from the caption of this case.

IT IS SO ORDERED this 9th day of June, 2026.

David L. Russell

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

[1] Given this ruling, it is unnecessary to resolve the Attorney General's separate argument that Plaintiffs lack standing to maintain a claim against him.