# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., et al.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-26-582-R** |
| **GENTER DRUMMOND, in his official capacity as Attorney General of Oklahoma, et al.,** | ) | |
| **Defendants.** | ) | |

## ORDER

After the Oklahoma Statewide Charter School Board denied Plaintiffs' application to operate a religious charter school, Plaintiffs initiated this lawsuit asserting claims under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. A group of Oklahoma taxpayers and a group of parents of children that attend Oklahoma charter schools have each separately moved to intervene in this action as defendants [Doc. Nos. 15, 66]. Plaintiffs and the Charter School Board defendants each filed a response opposing intervention [Doc. Nos. 76, 77, 85, 86] and the proposed-intervenors filed separate reply briefs [Doc. Nos. 80, 88]. Because the proposed intervenors are entitled to intervene as of right, or in the alternative permissively, the motions are granted.

### ***Background***

Plaintiffs, the National Ben Gamla Jewish Charter School Foundation Inc. and its founder Peter Deutsch, seek to establish a virtual charter school in Oklahoma that has a distinctive religious mission grounded in the Jewish faith. Compl. [Doc. No. 1] ¶¶ 65-77. However, under Oklahoma law, a charter school must be "nonsectarian in its programs, admission policies, employment practices, and all other operations." Okla. State. tit. 70, § 3-136(A)(2). Recently, in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1 (Okla. 2024), the Oklahoma Supreme Court upheld this nonsectarian requirement, concluding that a charter school is a state actor, the creation of a religious charter school violates the Establishment Clause of the First Amendment, and the Free Exercise Clause of the First Amendment does not apply to a state-created school. *Drummond* was affirmed on appeal by an equally divided Supreme Court. *Oklahoma Statewide Charter Sch. Bd. v. Drummond ex rel. Oklahoma*, 605 U.S. 165 (2025).

Consistent with *Drummond*, the Oklahoma Statewide Charter School Board denied Plaintiffs' charter school application based on the school's religious character. Compl. ¶¶ 81-103. Significant here, several members of the Charter School Board expressed disagreement with the *Drummond* decision during their consideration of Plaintiffs' application. *Id.*

Plaintiffs then initiated this lawsuit against the members of the Charter School Board in their official capacities and the Oklahoma Attorney General in his official capacity. Plaintiffs allege that the nonsectarian requirement discriminates against religious institutions in violation of the Free Exercise Clause of the First Amendment and the Equal

Protection Clause of the Fourteenth Amendment. They seek a declaration that the nonsectarian requirement contained in Oklahoma state law is unconstitutional and an injunction prohibiting Defendants from enforcing the law. The Board filed an Answer [Doc. No. 59] indicating it does not oppose Plaintiffs' requested relief. The Attorney General filed a Motion to Dismiss [Doc. No. 52] arguing that he is not a proper party to this action.

Against this backdrop, two separate groups seek to intervene under Federal Rule of Civil Procedure 24. First, a group of Oklahoma Taxpayers (who also attend or have children that attend Oklahoma public schools) argue they have an interest in ensuring their tax dollars do not fund religious instruction in public schools, funds are not diverted to a religious school that would not be appropriate for their children, and the constitutional protections enjoyed by charter school students and teachers are preserved. Second, a group of Oklahoma Families who have children that attend charter schools argue they have an interest in ensuring that charter schools maintain their designation as public schools, and the consequent funding, services, and constitutional protections that designation provides. Plaintiffs and the Board object to intervention, arguing that both groups lack standing and do not satisfy the requirements for intervention outlined in Rule 24.

***Discussion***

Rule 24 provides two mechanisms for intervention: intervention as of right and permissive intervention. The proposed interveners invoke both avenues, contending that they are entitled to intervene as of right or, in the alternative, permissively. But before addressing each of those arguments, the Court resolves an antecedent issue raised by

Plaintiffs and the Board: whether the proposed intervenors must independently establish Article III standing.

**A. Standing**

Citing to *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017), Plaintiffs and the Board contend the proposed-intervenors must establish Article III standing to intervene in this action, which they cannot do. In *Town of Chester*, 581 U.S. at 440, the Supreme Court held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." But notably, *Town of Chester* involved a plaintiff-side intervenor and it was unclear whether he was seeking relief that was different than the relief sought by the existing plaintiff, specifically a separate money judgment in his own name. *Id.* at 440. Faced with those circumstances, the Supreme Court applied the "simple rule" that "[a]t least one plaintiff must have standing to seek each form of relief requested" to an intervening plaintiff:

> For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.

*Id*. at 439. Subsequent Supreme Court decisions have similarly recognized that an intervenor must establish independent Article III standing when the intervenor is seeking additional relief or independently invoking a federal court's jurisdiction, such as by appealing a decision the preexisting parties do not challenge. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657, 674 n.6 (2020) (finding that appellate court erred by inquiring into intervening defendant's independent Article III

standing where the intervenor sought the same relief as the appellant); *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (explaining that "it was not previously incumbent on the [intervening defendant] to demonstrate its standing" where it appeared in support of preexisting defendant at trial and on appeal "[b]ecause neither role entailed invoking a court's jurisdiction").

Here, unlike in *Town of Chester,* the proposed-intervenors seek to intervene as defendants for the sake of opposing, not pursuing, any form of judicial relief.[1] Plaintiffs and the Board point out that the existing Defendants are either seeking dismissal from the case or do not oppose the requested relief. Thus, the proposed-intervenors would be the only litigants seeking to defend the constitutionality of the challenged statute. But that does not change the fundamental posture of the case. There is presently a justiciable controversy[2] between the existing parties and the proposed-intervenors are not seeking any additional relief or invoking the Court's jurisdiction. Under these circumstances, the proposed-intervenors are not required to independently demonstrate their Article III standing. *See Greater Chautauqua Fed. Credit Union v. Marks,* No. 1:22-CV-2753

[1] In *Kane Cnty v. United States*, 928 F.3d 877, 887 n.12 (10th Cir. 2019) ("*Kane III*"), the Tenth Circuit applied *Town of Chester's* holding to a defense-side intervenor but held that the intervenor could rely on the standing of the preexisting defendant because it was not seeking different relief. Notably, the Tenth Circuit also explicitly rejected the proposition, previously stated as dicta in *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 913 (10th Cir. 2017), "that 'any party' seeking to intervene must demonstrate its own independent Article III standing." *Id.* at 887 n.11. Rather, the Tenth Circuit explained that an intervenor could "piggyback" on the standing of a preexisting party where there was a live case or controversy and the intervenor did not seek different relief. *Id.*

[2] Although the Board seemingly agrees with Plaintiffs' legal arguments regarding the constitutionality of the statute and do not oppose Plaintiffs' requested relief, its refusal to grant Plaintiffs' application suffices to preserve a justiciable dispute. *See United States v. Windsor,* 570 U.S. 744, 759 (2013) ("The Government's position—agreeing with Windsor's legal contention but refusing to give it effect—meant that there was a justiciable controversy between the parties[.]").

(MKV), 2023 WL 2744499, at *6 (S.D.N.Y. Mar. 31, 2023) ("They do not seek relief different than that sought by any party with standing; in fact, they do not seek any traditional relief at all: they request no money judgment, no declaratory judgment, and no injunction."); *Brumback v. Ferguson*, 343 F.R.D. 335, 345 (E.D. Wash. 2022) ("A defendant is not the injured party in a lawsuit and its presence does not invoke the power of the federal court."); *Env't Integrity Project v. Wheeler*, No. 20-CV-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (then Judge Jackson concluding that defendant intervenors "are not required to demonstrate that they have Article III standing" because they "are not invoking the Court's jurisdiction – let alone seeking relief that is broader than or different from the party invoking the Court's jurisdiction") (quotation marks and alterations omitted); *AAAG-California, LLC v. Kisana,* 553 F. Supp. 3d 1042, 1047 (D. Utah 2021) ("Courts generally do not require parties opposing judicial relief to demonstrate standing[.]"); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019) ("Putative Intervenors, on the other hand, do not ask the Court to do anything; they do not raise a counterclaim, cross-claim, or any other claim for relief.")

**B. Intervention as of Right**

Issues of standing now resolved, the Court turns to the proposed-intervenors contention that they are entitled to intervene in this action as of right. The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (quotation marks omitted). And, pertinent to this case, "the requirements for intervention

may be relaxed in cases raising significant public interests." *Kane III*, 928 F.3d at 890 (quotation marks omitted).

Rule 24(a)(2) "provides that a 'court must permit anyone to intervene' who, (1) 'on timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quoting Fed. R. Civ. P. 24(a)(2) (brackets omitted). No one disputes that both motions to intervene, which were filed less than a month after the Complaint and before any significant litigation developments, are timely. The Court therefore focuses its analysis on the remaining requirements, both of which are contested.

The primary dispute amongst the litigants concerns Rule 24(a)(2)'s interest and impairment requirement. To meet this requirement, "an applicant 'must have an interest that could be adversely affected by the litigation.'" *Kane III*, 928 F.3d at 891 (quoting *San Juan Cnty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (abrogated on other grounds)). "The sufficiency of an applicant's interest is a highly fact-specific determination," *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002), that requires the application of "'practical judgment' when 'determining whether the strength of the interest and the potential risk of injury to that interest justify intervention.'" *Kane III*, 928 F.3d at 891 (quoting *San Juan Cnty.*, 503 F.3d at 1199). These "are not rigid, technical requirements" but are instead "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with

efficiency and due process." *San Juan Cnty.,* 503 F.3d at 1195 (quotation marks omitted). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *Id.* at 1203 (quotation marks omitted). The burden is "minimal" and is generally satisfied if the intervenor "would be substantially affected in a practical sense by the determination made in the action." *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 995 (10th Cir. 2009) (quotations marks omitted).

Here, the Oklahoma Taxpayers and the Oklahoma Families argue that they have protectable interests that may be impaired if they are not allowed to intervene. Starting with the Oklahoma Taxpayers (who are also students or parents of students at Oklahoma public schools), they contend they have an important interest in vindicating their right under state law to ensure their tax dollars are spent lawfully,[3] in preventing the diversion of limited public resources away from their nonsectarian schools and to a religious school, and in preserving the constitutional protections that charter school teachers and students currently enjoy. Regardless of whether these interests are sufficient to confer standing, the Court is persuaded that they are sufficiently strong to support intervention, particularly given the significant public interests at stake and the lack of adverseness amongst the existing parties. As state taxpayers and parents of students at Oklahoma public schools, these proposed-intervenors have an interest in preventing the potentially unlawful use of their state tax

[3] *See White v. Stitt,* 579 P.3d 636, 642 (Okla. 2025) ("Taxpayers have a legal right to the lawful appropriation and expenditure of public funds."); *Oklahoma Pub. Emps. Ass'n v. Oklahoma Dep't of Cent. Servs.,* 55 P.3d 1072, 1078 (Okla. 2002) ("Thus, a taxpayer possesses standing to seek equitable relief when alleging that a violation of a statute will result in an illegal expenditure of public funds or the imposition of an illegal tax.").

dollars to fund a religious charter school and in preventing the diversion of funds from their nonsectarian public schools to a sectarian charter school. These interests would, as a practical matter, be impaired by a ruling in favor of Plaintiffs, which could result in a taxpayer funded religious school or a finding that charter schools are not state actors. *See Am. C.L. Union of Minnesota v. Tarek Ibn Ziyad Acad.,* No. CIV. 09-138DWFJJG, 2009 WL 2215072, at *5 (D. Minn. July 21, 2009) (concluding that taxpayers had standing to challenge a state spending program that disbursed public funds to a charter school that was allegedly nonsectarian); *see also Flast v. Cohen,* 392 U.S. 83, 103 (1968) (recognizing a narrow avenue for taxpayer standing in an Establishment Clause case).

The Oklahoma Families contend that they too have a protectable interest, and one that is different from the Oklahoma Taxpayers. They argue that, as the parents of children attending charter schools, they have a direct and substantial interest in ensuring that charter schools retain their designation as public schools, which ensures that the schools receive certain forms of federal and state funding as well as certain federal antidiscrimination protections. For similar reasons, the Court is persuaded that these interests and the risk of impairment to these interests is sufficiently strong to support intervention. The Oklahoma Families have an interest in protecting the services and funding that they currently receive at their charter schools. This interest is at risk of impairment given that a key issue in this case is whether a charter school is state actor. *See Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, 894 F.3d 959, 965–66 (8th Cir. 2018) (finding that charter school parents suffered a concrete injury where an adverse ruling would result in a loss of school funding and a decline in quality).

Further, despite Plaintiffs' and the Board's protestations to the contrary, the interests of the proposed-intervenors are not so speculative or attenuated as to warrant denying intervention. The point of Plaintiffs' lawsuit is to declare the nonsectarian requirement in Oklahoma's charter school law unconstitutional so that they may establish a religious charter school. Resolution of their claims will almost certainly involve analyzing whether a charter school is a public school and whether the First Amendment prohibits the expenditure of public funds to support it. The interests of the proposed-intervenors in preventing the diversion of their tax dollars to a religious school and in maintaining the public-school status of their charter schools "could be" adversely affected by this case. *Kane III*, 928 F.3d at 891. The proposed-intervenors have therefore met their burden to show a potential impairment of their respective interests.

The remaining dispute, advanced only by the Board, concerns whether the existing parties adequately represent the interests claimed by the proposed intervenors. The burden of showing inadequate representation "is minimal, and it is enough to show that the representation 'may be' inadequate." *Kane III*, 928 F.3d at 892 (quotation marks omitted). "An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest." *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984). However, a mere disagreement regarding the facts or law of the case is not sufficient. *Id.*

The proposed intervenors have met their minimal burden of showing that the existing parties will not adequately represent their interests. The Board does not oppose

Plaintiffs' requested relief and has previously expressed its disagreement with the *Drummond* decision. *See Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (finding inadequate representation where existing party's prior action demonstrated "reluctance" to provide a defense). As for the Attorney General, he is presently seeking dismissal from this action as an improper party. And although he has previously defended the lawfulness of the nonsectarian requirement, whether his predecessor will take the same position is far from clear. *See Zinke,* 877 F.3d at 1169 (10th Cir. 2017) (finding inadequate representation where a "change in the Administration raises the possibility of divergence of interest or a shift during litigation") (quotation marks omitted).

Additionally, the interests of the Oklahoma Taxpayers and the Oklahoma Families are sufficiently distinct such that intervention by one group does not preclude intervention by the other. For a proposed intervenor to establish inadequate representation by a representative party, "the possibility of divergence of interest need not be great[.]" *Kane III*, 928 F.3d at 894. Indeed, adequate representation requires the interests to "be *identical*, not just harmonious." *Kane Cnty. v. United States (Kane IV)*, 94 F.4th 1017, 1033 (10th Cir. 2024) (quotation marks omitted). Although the interests of the Oklahoma Families and the Oklahoma Taxpayers may overlap in certain ways, they are not entirely coextensive. The primary concern of the Oklahoma Taxpayers is preventing the diversion of the public funds to a religious school, whereas the Oklahoma Families are focused on protecting the funding and services that flow to a public charter school. Both groups have met their minimal

burden of showing that they may not be adequately represented by the existing parties, or the other proposed-intervenor.

Under the circumstances presented here, and without prejudging the merits of the underlying claims, the Court concludes that the proposed-intervenors are entitled to intervene as of right under Fed. R. Civ. P. 24(a).

**C. Permissive Intervention**

Proposed intervenors argue that, even if they are not entitled to intervene as of right, they should at least be granted permission to intervene under Rule 24(b)(2), which provides for permissive intervention upon the timely motion of anyone who "has a claim or defense that shares with the main action a common question of law or fact." The proposed-intervenors intend to present defenses that share common questions of law or fact with the main action, including whether charter schools are state actors or engaged in state action. *See City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010) ("[T]he words 'claim or defense,' as they appear in Rule 24(b), should not be strictly interpreted so as to preclude permissive intervention."). Further, intervention will not cause undue delay or prejudice the adjudication of the existing parties' rights given the early stages of the litigation and the fact that the proposed-interveners are prepared to promptly file their responsive pleadings. The Board's concern that the intervention of two additional parties would unnecessarily "clutter" the action is unfounded and, in any event, undermined by its suggestion that the movants be allowed to participate as amicus curiae. Accordingly, as an alternative finding, permissive intervention is warranted.

***Conclusion***

For the reasons stated above, both the Oklahoma Taxpayers and the Oklahoma Families are entitled to intervene under Fed. R. Civ. P. 24(a)(2). Alternatively, they are entitled to intervene under Fed. R. Civ. P. 24(b). Accordingly, the Motion to Intervene [Doc. No. 15] is GRANTED and the Motion to Intervene [Doc. No. 66] is GRANTED. The defendant-intervenors shall file their responsive pleadings within 14 days of the date of this order.

IT IS SO ORDERED this 3rd day of June, 2026.

David L. Russell

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**