No. 26-6166

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*,

*Plaintiffs-Appellees*,

v.

BRIAN T. SHELLEM, in his official capacity as Chairman of the Oklahoma Statewide Charter School Board, *et al.*,

*Defendants-Appellants*,

and

DANIEL KAIMAN, *et al.*,

*Intervenor Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Oklahoma
The Hon. David L. Russell
No. 5:26-cv-00582-R

# Defendants-Appellants' Response in Opposition to the State of Oklahoma's Motion for Leave to Appear and to Dismiss the Appeal (ECF No. 13) and Moore and Kaiman Intervenor Defendants-Appellees' Motions to Dismiss (ECF Nos. 15 & 26)

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL & PROCEDURAL BACKGROUND ........ 2

ARGUMENT & AUTHORITIES ........ 5

I. The Attorney General is not entitled to intervene. ........ 5

II. The Court has jurisdiction to hear this appeal. ........ 8

CONCLUSION ........ 20

CERTIFICATE OF COMPLIANCE ........ 22

CERTIFICATE OF DIGITAL SUBMISSION ........ 22

CERTIFICATE OF SERVICE ........ 22

# TABLE OF AUTHORITIES

## CASES

*Amazon, Inc. v. Dirt Camp, Inc.*,
273 F.3d 1271 (10th Cir. 2001) ........................................................16

*Barnes v. Sec. Life of Denver Ins. Co.*,
945 F.3d 1112 (10th Cir. 2019) ........................................................7

*Brown v. Farmers Ins. Co.*,
308 F.App'x 303 (10th Cir. 2009) ........................................................19

*Camreta v. Greene*,
563 U.S. 692 (2011) ........................................................15

*Cherokee Nation v. U.S. Dep't of the Interior*,
564 P.3d 58 (Okla. 2025) ........................................................7, 8

*Cherokee Nation v. U.S. Dep't of the Interior*,
643 F.Supp.3d 90 (D.D.C. 2022) ........................................................14

*Cox v. Cmty. Loans of Am., Inc.*,
No. 12-11599, 2013 WL 7861816 (11th Cir. Jan. 18, 2013) ........................19, 20

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ........................................................16

*Drummond ex rel. State v. Oklahoma Statewide Virtual Charter Sch. Bd.*,
558 P.3d 1 (Okla. 2024) ........................................................2

*Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Asssocs., Inc.*,
488 F.3d 88 (2d Cir. 2007) ........................................................19

*Haitian Refugee Ctr. v. Civiletti*,
614 F.2d 92 (5th Cir. 1980) ........................................................19, 20

*Horne v. Flores*,
557 U.S. 433 (2009) ........................................................15

*INS v. Chadha*,
462 U.S. 919 (1983) .......................................................................10, 13

*Montez v. Hickenlooper*,
640 F.3d 1126 (10th Cir. 2011) .......................................................................19

*Nat'l Ben Gamla Jewish Charter Sch. Found., Inc. v. Shellem*,
No. 5:26-cv-582, 2026 WL 2882202 (W.D. Okla. Sept. 24, 2026) ....................14

*Okla. Statewide Charter Sch. Bd. v. Drummond ex rel. Okla.*,
605 U.S. 165 (2024) .......................................................................14

*Powell v. Washington Metro. Area Transit Comm'n*,
466 F.2d 466 (D.C. Cir 1972).......................................................................16

*Pub. Serv. Co. of New Mexico v. Barboan*,
857 F.3d 1101 (10th Cir. 2017) .......................................................................5, 6, 7

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......................................................................11, 13, 18

*Shepard v. Rangel*,
730 F.App'x 610, 612 (10th Cir. 2018).......................................................................16

*United States v. Windsor*,
570 U.S. 744 (2013) ....................................................8, 9, 10, 11, 13, 14, 16, 18

*Wicks v. Cnty. of Laramie*,
36 F.3d 1106 (10th Cir. 1994) .......................................................................16

*Wilberforce Acad. of Knoxville v. Knox Cnty. Bd. of Educ.*,
No. 3:25-cv-584, 2026 WL 3372700 (E.D. Tenn. Nov. 6, 2026) .......................14

**STATUTES**

Fed. R. App. P. 29 .......................................................................6

Okla. Stat. tit. 70, § 3-136 .......................................................................2, 15

Okla. Stat. tit. 74, § 18b.......................................................................7

**OTHER AUTHORITIES**

10th Cir. R. 27.3 .......................................................................................................5

Def. United States' Mem. of Law in Resp. to Pl.'s Mot. for Summ. J. and Intervenor's Mot. to Dismiss, Windsor v. United States, 833 F.Supp.2d 394 (S.D.N.Y. 2012) (No. 1:10-cv-08435-BSJ-JCF), ECF No. 71 ...............................9

Fed. R. App. P. 27 .......................................................................................................5

Fed. R. Civ. P. 24 .......................................................................................................5

Okla. Att'y Gen. Op. 2026-17, 2026 WL 3223976 (Okla. A.G. Oct. 22, 2026) .........................................4, 13, 18

OKSCSB, *Agenda of Regular Meeting* (Oct. 12, 2026), https://oklahoma.gov/scsb/about-us/board-meetings .............................................3

Original Pet., OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd., No. CV-2023-1857 (Okla. Cnty. Dist. Ct. July 31, 2023)...................................14

Pet. for Writ of Mandamus, Drummond v. Okla. Statewide Charter Sch. Bd., No. CV-26-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026)........................................14

## Introduction

Two Intervenors and the Oklahoma Attorney General move the Court to dismiss this appeal. They argue primarily that because Defendants-Appellants Oklahoma Statewide Charter School Board agreed with Plaintiffs-Appellees Ben Gamla's legal proposition—that Oklahoma's requirement that charter schools be nonsectarian violates the Free Exercise Clause—in the court below and requested the court grant Ben Gamla's request for injunctive relief, this appeal not justiciable. But precedent forecloses their argument.

*United States v. Windsor* permits appeals in constitutional cases where a "dual-track" procedure is followed. That is, when a government party determines a law is unconstitutional but continues enforcement, the adversity necessary for litigation is maintained. The Board did exactly that. Despite its concurrence that the nonsectarian requirement is unconstitutional, the Board denied Ben Gamla's application under that law. And even though the district court enjoined application of the nonsectarian requirement, Ben Gamla's application remains denied. After the injunction, the Attorney General prevented the Board from taking any further action on Ben Gamla's revised application.

So the Court should resist both Intervenors' attempts to avoid binding precedent by reframing the Board's actions. And the Court should restrain the Attorney General's attempts to rejoin a case he requested—and was granted—

dismissal from, without providing any legal basis in his motion justifying intervention. The Court should deny all motions.

## FACTUAL & PROCEDURAL BACKGROUND

The National Ben Gamla Jewish Charter School Foundation, Inc. applied to establish a virtual charter school with a religious mission. The Board denied the initial application and later denied the revised application based on the proposed school's religious character in compliance with the Oklahoma Charter Schools Act's nonsectarian requirement, Okla. Stat. tit. 70, § 3-136(A)(2), and the Oklahoma Supreme Court's decision in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024). Dist. Ct. ECF No. 63 at 7–8 (A347–48).[1]

Ben Gamla sued the Board and the Attorney General in his official capacity. Dist. Ct. ECF No. 1 at 1 (A16). The district court granted the Attorney General's motion to dismiss, agreeing that the Act empowers the Board—not the Attorney General—to deny applications and enforce the challenged provision and that the Attorney General lacks supervisory authority over the Board. Dist. Ct. ECF No. 90 at 4, 6 (A526, 528). The court removed him from the caption. *Id.* at 9 (A531).

[1] Citations to "A---" refer to the consecutively paginated appendix attached to the Kaiman Intervenor Defendants-Appellees' Motion to Dismiss (ECF No. 26).

The district court allowed two groups to intervene as defendants: Kaiman and Moore Intervenors. Dist. Ct. ECF No. 89 at 1 (A509). It found that the Board did not oppose Ben Gamla's requested relief and that Intervenors would defend the challenged law. *Id.* at 5, 8–10 (A513, A516–18). But the court also held that the Board's refusal to grant the application preserved a justiciable controversy despite the Board's agreement with Ben Gamla's constitutional position. *Id.* at 5 n.2 (A513).

The Board supported Ben Gamla's request for a preliminary injunction, explaining that it believed denial of an otherwise-qualified application solely because of religious character violated the Free Exercise Clause. Dist. Ct. ECF No. 63 at 1 (A341). The court adjudicated the motion in contested proceedings with adverse briefing and oral argument. Dist. Ct. ECF No. 121 at 1 (A747).

On September 24, 2026, the court entered a preliminary injunction precluding the Board from enforcing the nonsectarian requirement or otherwise excluding Ben Gamla from the charter school program because of its religious character. Dist. Ct. ECF No. 121 at 30 (A776). The court again held that the Board's refusal to grant the application preserved a justiciable dispute. Dist. Ct. ECF No. 121 at 7 n.7 (A753).

On October 12, 2026, the Board took up the revised application in light of the preliminary injunction. OKSCSB, *Agenda of Regular Meeting* (Oct. 12, 2026), https://oklahoma.gov/scsb/about-us/board-meetings (A792). Upon a motion to

approve Ben Gamla's revised application, four members voted in favor, three voted against, one member was absent, and one seat was vacant. Kaiman Intervenors' Partial Tr. of OKSCSB 10/12/2026 Meeting at 3–5 (A799–801). But Oklahoma law requires at least five affirmative votes for the Board to take final action, so the vote resulted in non-action. *See* Okla. Stat. tit. 70, § 3-132.1(H). Thus, the prior denial of Ben Gamla's application solely because of its religious character remains in effect. *Cf.* Okla. Att'y Gen. Op. 2026-17, 2026 WL 3223976 at *5 (Okla. A.G. Oct. 22, 2026) ("the Board completed the statutory process to accept or reject the application seven months before October 12").

Ten days later, before the Board could take any additional action on Ben Gamla's application in order to comply with the district court's order, the Oklahoma Attorney General issued Opinion 2026-17. The Opinion concludes that the Board's statutory authority over the revised application was exhausted and that the Board cannot reconsider, rescind, or conduct another vote on that application. *Id.* at *9. Ben Gamla's revised application remains denied for its religious character, and the Board cannot vote on it again. *See id.*

The Board timely appealed the preliminary injunction. Dist. Ct. ECF No. 125 (A837–38). Since then, the Oklahoma Attorney General—on behalf of the State of Oklahoma—moved for leave to intervene and to dismiss the appeal. ECF No. 13. Both Intervenors moved separately to dismiss the appeal. ECF Nos. 15 & 26.

## ARGUMENT & AUTHORITIES

The Court should deny the motions to dismiss. First, the Attorney General is not entitled to intervene in this appeal. Second, the Court has jurisdiction to hear the appeal.

### I. The Attorney General is not entitled to intervene.

Only "part[ies]" to a case may file a jurisdictional motion to dismiss. 10th Cir. R. 27.3. A motion under Federal Rule of Appellate Procedure 27 does not itself confer party status. The Attorney General must first establish a federal basis to intervene. He nevertheless seeks party status for the limited purpose of dismissing the Board's appeal, even though he requested—and obtained—dismissal below. Dist. Ct. ECF No. 90 at 1 (A523). His instant request conflates the Attorney General's authority to represent state interests with the distinct federal question of whether he is a party entitled to intervene and seek dispositive relief. Notably, his motion makes no mention of the requirements for intervention on appeal under Federal Rule of Civil Procedure 24(a).

Appellate intervention is evaluated under the four requirements governing intervention as of right: timeliness, a qualifying interest, potential impairment, and inadequate representation. *See Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017). But when intervention was not sought below, the Court allows intervention on appeal "only in an exceptional case for imperative reasons."

*Id.* (quoting *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005)). The Attorney General cannot satisfy these requirements.

There is presently no imperative reason for the Attorney General's intervention.[2] His prior reservation of a claimed right to participate later did not itself confer appellate party status or create a protectable interest where he has none. ECF No. 13 at 4; *see* Dist. Ct. ECF No. 52 at 1 n.1 (A266).

First, the Attorney General fails to identify a protectable interest in the preliminary injunction. Nor can he. He previously represented that he has no role in administering the Act, processing or denying applications, enforcing the nonsectarian requirement, supervising the Board, or redressing Ben Gamla's injury. Dist. Ct. ECF No. 52 at 1 (A266). The district court agreed. Dist. Ct. ECF No. 90 at 9 (A531). It determined that the Act vests those responsibilities in the Board and that the Attorney General's generalized litigation authority under § 18b(A)(3) is insufficient to connect him to enforcement of the challenged requirement. *Id.* at 4 (A526).

So the Attorney General has not—and cannot—show a practical, legally protectable interest in the injunction. But that's what intervention requires. *See*

[2] On November 3, Oklahoma elected a new Attorney General who will assume office in January. The incoming Attorney General's position may differ from that of his predecessor, counseling against intervention now. Regardless, the State may later file an amicus brief on the merits without leave under Federal Rule of Appellate Procedure 29(a)(2).

*Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019). A generalized concern for the "integrity" of an order against another state entity does not explain how appellate review impairs an interest the Attorney General is empowered to administer. ECF No. 13 at 5.

Second, the Attorney General fails to show inadequate representation necessitating his intervention. Since the filing of his motion challenging the Court's jurisdiction, both Intervenors separately raised and adequately briefed the issue. ECF Nos. 15 & 26.

Where an applicant and an existing party share an identical legal objective, adequate representation is presumed. *See Barboan*, 857 F.3d at 1113. To the extent the Attorney General's objective is preservation of the injunction and dismissal of the Board's appeal, ECF No. 13 at 5, he has not shown why both Intervenors cannot adequately represent this objective. So the Court should deny the Attorney General party status and intervention.

Third, the Attorney General's reliance on Oklahoma state law cannot cure his failure to satisfy the requirements for intervention. He asserts that Okla. Stat. tit. 74, § 18b(A)(2)–(3) authorizes him to appear in litigation involving Oklahoma's interests and that *Cherokee Nation v. United States Department of the Interior*, 564 P.3d 58 (Okla. 2025), recognizes his authority to represent an otherwise unrepresented segment of the State's interests. ECF No. 13 at 4. But even the

authority invoked by the Attorney General contemplates that federal courts determine whether additional involvement is warranted. *See Cherokee Nation*, 564 P.3d at 74 (deferring to the federal court's determination whether the State's interests were already adequately represented). State authorization to speak for an interest does not automatically satisfy the distinct federal requirements governing intervention or restore the Attorney General to litigation from which he requested and obtained dismissal.

## II. The Court has jurisdiction to hear this appeal.

Each motion to dismiss ignores that *INS v. Chadha*, *United States v. Windsor*, and *Seila Law v. CFPB* all support the justiciability of this appeal. Moore Intervenors' motion makes no mention of *Windsor*, and both the Attorney General and Kaiman Intervenors unpersuasively attempt to distinguish it. *See* ECF Nos. 13 at 8; 26 at 22–25. But as the district court twice recognized, this case is justiciable under *Windsor*. Dist. Ct. ECF Nos. 89 at 5 n.2 (A513); 121 at 7 n.7 (A753). The same logic applies on appeal.

*Windsor* involved a constitutional challenge to Section 3 of the Defense of Marriage Act (DOMA), which defined "spouse" as "a person of the opposite sex who is a husband or wife" under federal law. 570 U.S. 744, 752 (2013). After Edith Windsor's same-sex spouse died, she did not qualify for a marital exemption from the federal estate tax, because she was not a "surviving spouse" under DOMA's

definition. *Id.* at 753. Windsor sued for a refund, arguing that DOMA violated the Equal Protection Clause. *Id.*

Concurrently, the President "concluded that given a number of factors . . . classification based on sexual orientation should be subject to a heightened standard of scrutiny" and "instructed the Department [of Justice] not to defend the statute in *Windsor*." *Id.* at 753–54. The President also decided "that Section 3 [of DOMA] w[ould] continue to be enforced by the Executive Branch." *Id.* at 755. The "rationale for this dual-track procedure (determination of unconstitutionality coupled with ongoing enforcement) was to recognize the judiciary as the final arbiter of the constitutional claims raised." *Id.* (citation modified). The Bipartisan Legal Advisory Group (BLAG) of the House of Representatives intervened to defend the constitutionality of DOMA. *See id.*

In district court, the Justice Department advocated that "Section 3 of DOMA fails heightened scrutiny, and this Court should . . . grant Plaintiff's motion for summary judgment." Def. United States' Mem. of Law in Resp. to Pl.'s Mot. for Summ. J. and Intervenor's Mot. to Dismiss at 28, Windsor v. United States, 833 F.Supp.2d 394 (S.D.N.Y. 2012) (No. 1:10-cv-08435-BSJ-JCF), ECF No. 71. The district court agreed with Windsor and the Justice Department, holding that DOMA was unconstitutional and ordering the Treasury to refund the tax with interest. *See*

*Windsor,* 570 U.S at 754. The Justice Department and BLAG appealed, and the Second Circuit affirmed. *See id.* at 754–55.

The Supreme Court requested briefing on "whether the United States' agreement with Windsor's legal position precludes further review." *Id.* at 755. Because "all parties agree[d] that the Court ha[d] jurisdiction to decide this case, . . . the Court appointed . . . *amicus curiae* to argue the position that the Court lacked jurisdiction to hear the dispute." *Id.*

Amicus argued that "once the President agreed with Windsor's legal position and the District Court issued its judgment, the parties were no longer adverse . . . [and] the United States was a prevailing party below, just as Windsor was." *Id.* at 756. The Court disagreed, writing that "the United States retains a stake sufficient to support Article III jurisdiction on appeal," because the order directing the Treasury to pay the refund was a "real and immediate economic injury." *Id.* at 757–58. And "Windsor's ongoing claim for funds that the United States refuse[d] to pay thus establishe[d] a controversy sufficient for Article III jurisdiction." *Id.* at 758. Notably, the Court stated that "[i]t would be a different case if the Executive had taken the further step of paying Windsor the refund to which she was entitled under the District Court's ruling." *Id.*

To reach this conclusion, the Court relied on *INS v. Chadha*, 462 U.S. 919 (1983). There, even though "'the Government largely agree[d] with the opposing

party on the merits of the controversy,' there [was] sufficient adverseness and an 'adequate basis for jurisdiction in the fact that the Government intended to enforce the challenged law against that party.'" *Windsor*, 570 U.S. at 759 (quoting *Chadha*, 462 U.S. at 940 n.12). Therefore, "[i]n an appropriate case, appeal may be permitted . . . at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art[icle] III." *Id.* (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333–34 (1980)). Additionally, the *Windsor* Court noted that BLAG's presence satisfied the "prudential . . . concerns against hearing an appeal from a decision with which the principal parties agree," because of its "sharp adversarial presentation of the issues." *Id.* at 761.

The Supreme Court recently relied on *Windsor*'s jurisdictional holdings in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020). In that case, the government agreed with the plaintiff on the constitutional issue—a question about the separation of powers—but it continued to enforce a civil investigative demand that sparked the litigation. *See Seila Law*, 591 U.S. at 208. The Supreme Court appointed counsel to defend the judgment below as amicus. Amicus raised that the case should be dismissed "because the parties agree on the merits of the constitutional question and the case therefore lack[ed] 'adverseness.'" *Id.* at 212. The Court held that *Windsor* foreclosed this argument. *See id.*

Here, like in *Windsor*, the merits of the case involve a constitutional challenge to a duly-enacted law that Ben Gamla believes violates its civil rights. The Board enforced the nonsectarian requirement but does not defend the constitutionality of it. Ben Gamla's application remains denied for its religious character per the Board's March 10 letter. Letter from Skyler H. Lusnia, Director of School Performance, to Brett Anthony Farley, Ben Gamla Jewish Charter School (March 10, 2026) (A137). This "dual-track" procedure recognizes the Board's commitment to following the rule of law and respecting the judiciary's role in interpreting the Constitution. Additionally, both Intervenors defend the constitutionality of the nonsectarian requirement. *See* Dist. Ct. ECF No. 89 at 5 (A513). By filing motions to dismiss, both signaled to the Court their intention to sharply litigate constitutional issues raised in this appeal.

The core complaint in each motion is that the Board asked the district court to grant the preliminary injunction. *See* ECF Nos. 13 at 5; 15 at 6; 26 at 19. But this argument cannot withstand *Windsor*. Just as the Justice Department argued that the Court should grant Windsor's motion, the Board, in its response to Ben Gamla's motion, "respectfully request[ed] th[e] Court grant the Motion for Preliminary Injunction." Dist. Ct. ECF No. 63 at 6 (A341). Here, as in *Windsor*, the district court granted the plaintiffs' motion and the government's request.

Similar again to *Windsor*, the Board filed a notice of appeal. Understandably so, because a "a lower court order that presents real-world consequences for the Government and its adversary suffices to support Article III jurisdiction—even if 'the [Government] may welcome' an adverse order that 'is accompanied by the constitutional ruling it wants.'" *Seila Law*, 591 U.S. at 212 (quoting *Windsor*, 570 U.S. at 758); *see also Chadha*, 462 U.S. at 930–31 ("[T]he INS was sufficiently aggrieved by the Court of Appeals decision prohibiting it from taking action it would otherwise take . . . [and] the agency's status as an aggrieved party . . . is not altered by the fact that the Executive may agree with the holding that the statute in question is unconstitutional.").

Agreement about the constitutional issues does not deprive a court of jurisdiction. Again paralleling *Windsor*, where the United States did not pay Windsor "the refund to which she was entitled under the District Court's ruling," 570 U.S. at 758, and *Seila Law*, where "the lower courts sided with the Government, and the Government has not volunteered to relinquish that victory and withdraw the [civil investigative] demand," 591 U.S. at 212–13, the Board has not taken any final action on Ben Gamla's revised application since the entry of the preliminary injunction. It cannot—Oklahoma Attorney General Opinion 2026-17 prohibits the Board from acting again on Ben Gamla's application. Okla. Att'y Gen. Op. 2026-17, 2026 WL 3223976 at *9; *see Cherokee Nation v. U.S. Dep't of the Interior*, 643

F.Supp.3d 90, 117 (D.D.C. 2022) ("In Oklahoma, an official legal opinion from the state Attorney General such as this is legally binding . . . until it is overruled judicially."). So Ben Gamla's application remains denied, and the Board retains a stake in the matter sufficient to support the justiciability of this appeal under *Windsor*.

And like *Windsor*, "this case is not routine." *Windsor*, 570 U.S. at 763. "Were this Court to hold that prudential rules require it to dismiss the case . . . extensive litigation would ensue." *Id.* at 761. *Cf. Wilberforce Acad. of Knoxville v. Knox Cnty. Bd. of Educ.*, No. 3:25-cv-584, 2026 WL 3372700, at *4–7 (E.D. Tenn. Nov. 6, 2026) (addressing the constitutionality of Tennessee's requirement that charter schools be "nonsectarian" and "nonreligious"). It already has: four times.[3] And the Supreme Court previously deadlocked on the issue. *See Okla. Statewide Charter Sch. Bd. v. Drummond ex rel. Okla.*, 605 U.S. 165 (2024)*; see also* Dist. Ct. ECF No. 121 at 5 n.5 (A751–52) (noting *Drummond* is not entitled to precedential value).

---

[3] Original Pet., OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd., No. CV-2023-1857 (Okla. Cnty. Dist. Ct. July 31, 2023) (advocacy group's lawsuit challenging the Board's approval of St. Isidore of Seville Catholic Virtual School); *Drummond*, 558 P.3d 1 (Attorney General's mandamus petition challenging the Board's approval of St. Isidore); Pet. for Writ of Mandamus, Drummond v. Okla. Statewide Charter Sch. Bd., No. CV-26-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) (Attorney General's mandamus petition challenging Board's denial of Ben Gamla); *Nat'l Ben Gamla Jewish Charter Sch. Found., Inc. v. Shellem*, No. 5:26-cv-582, 2026 WL 2882202 (W.D. Okla. Sept. 24, 2026) (Ben Gamla's lawsuit challenging the Board's denial of Ben Gamla).

Both Intervenors' and the Attorney General's counterarguments are unpersuasive.

First, the Attorney General and Moore Intervenors argue that the Board is not aggrieved because it requested the district court grant the preliminary injunction. ECF Nos. 13 at 5–6; 15 at 6–7. But *Chadha*, *Windsor*, and *Seila Law* counsel otherwise. The fact that the Board may agree with the constitutional holding of the court's order does not alter its aggrieved status. Moreover, the injunction requires the Board to refrain from something that Oklahoma law requires—consideration of Ben Gamla's religious character when evaluating its application. *Contrast* Dist. Ct. ECF No. 121 at 30 (A776) *with* Okla. Stat. tit. 70, § 3-136(A)(2). *See Horne v. Flores*, 557 U.S. 433, 445 (2009) (finding that a "named defendant in the case" alleged a "sufficiently personal stake in the outcome of the controversy" to support standing when an injunction runs against him (internal quotations omitted)). So the Board continues to seek clarity on the constitutionality of Oklahoma's nonsectarian requirement for charter schools, with the understanding that other religious applicants may present themselves in the future. *See Camreta v. Greene*, 563 U.S. 692, 702 (2011) (holding that "an appeal presents a case or controversy, no matter that the appealing party was the prevailing party below" when "the litigants possess [a] personal stake" in the outcome).

The cases cited by the motions to dismiss fail to overcome *Chadha*, *Windsor*, and *Seila Law*'s application to this case. Moore Intervenors and the Attorney General both rely on *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), to argue that the Board is not aggrieved, and therefore, cannot appeal.[4] ECF Nos. 13 at 5; 15 at 6, 7. But *Windsor* expressly cites—and therefore considers—*Roper*'s holding, while still concluding that the Supreme Court had jurisdiction to hear the United States' appeal. *See Windsor*, 570 U.S. at 759. And the Attorney General's reliance on *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001) is misplaced, as *Amazon* supports the Board's appeal. ECF No. 13 at 6, 7. There, the Court allowed the appeal of a summary judgment grant, where the district court ruled in favor of the movant on federal claims, but declined to exercise supplemental jurisdiction and dismissed state law claims. *See Amazon*, 273 F.3d at 1274. In adjudicating the appeal, the Court found that the movant was aggrieved by the dismissal of the state law claims, because it left the movant exposed to additional litigation in a different forum. *See id.* at 1276. The Board has litigated the issue of

---

[4] Moore Intervenors' arguments also rely on a number of nonbinding, unpublished, and distinguishable cases. ECF No. 15 at 6–9; *see also Shepard v. Rangel*, 730 F.App'x 610, 612 (10th Cir. 2018) (dismissing the appeal of a party's own granted motion); *Powell v. Washington Metro. Area Transit Comm'n*, 466 F.2d 466, 468 (D.C. Cir. 1972) (dismissing a petition for review where a party received the relief requested, but it moved for reconsideration of constitutional issues that were not "imperatively required" for resolution); *Wicks v. Cnty. of Laramie*, 36 F.3d 1106 (10th Cir. 1994) (table) (dismissing the plaintiff's appeal of a voluntary dismissal).

Oklahoma's nonsectarian requirement for charter schools since 2023 in multiple forums. *See supra* 14 n.3. So allowing this appeal recognizes that the Board needs an ultimate and final answer about application of this legally controversial statute—without being exposed to additional litigation in multiple forums.

Additionally, the Attorney General's motion implies that the Board should seek clarification or modification of the injunction, but it cites no authority requiring it to do so before pursuing its appeal. ECF No. 13 at 9. The Board is aggrieved now, under *Windsor*, and it has no legal obligation to seek additional relief in the district court before appealing.

Second, an actual, adverse controversy persists. *Contra* ECF Nos. 13 at 7; 26 at 16. The Attorney General incorrectly argues that this case is moot because of the absence of an adverse appellee. ECF No. 13 at 7. But both Intervenors are Appellees.[5] Under *Windsor* and *Seila Law*, Intervenors' or amicus participation

[5] Kaiman Intervenors make the argument that both Intervenors cannot defend the challenged statute because they did not appeal. ECF No. 26 at 25. This claim ignores that the clerk's office added both Intervenors as Appellees. ECF No. 10. Their motions implicitly recognize their party status, because unlike the Attorney General, neither Intervenor requests leave to appear or to intervene to file their motions to dismiss. Additionally, the argument that both Intervenors' ability to "defend the statute" is "hampered" without discovery is equally wrong, considering only the Kaiman Intervenors requested discovery, while the Moore Intervenors stated they do not need discovery to resolve the preliminary injunction. ECF No. 26 at 25; *see* Dist. Ct. ECF No. 121 at 30 (A776) (stating parties' positions on discovery stay). And, "defend[ing] the statute", ECF No. 26 at 25, as the district court recognized, is "largely legal in nature," Dist. Ct. ECF No. 121 at 31 (A777).

addresses any concerns about adversarial presentation—not jurisdictional dismissal. *See Windsor*, 570 U.S. at 761; *Seila Law*, 591 U.S. at 212.

And the Attorney General is incorrect that *Windsor* has no application to the adversity of the Board's appeal. ECF No. 13 at 8. Like *Windsor*, the Board has taken no final action on Ben Gamla's application after the district court's preliminary injunction order and is prevented from doing so. *See* Okla. Att'y Gen. Op. 2026-17, 2026 WL 3223976 at *9. Adjudication of this appeal will have real world consequences, because Ben Gamla's application remains denied.

Kaiman Intervenors rest their primary mootness argument on a factual inaccuracy. ECF No. 26 at 12–18. Contrary to Kaiman Intervenors' assertion, the Board has not "denie[d] Ben Gamla's application for nonreligious reasons." *Id.* at 12. The motion considered at the October 12 meeting was a motion to *approve* the application, and it failed to garner enough votes for final action. Kaiman Intervenors' Partial Tr. of OKSCSB 10/12/2026 Meeting at 3–5 (A799–801). It was not a denial—nor could it be without any stated reasons for denial on the record.[6] *Cf.* Kaiman Intervenors' Partial Tr. of OKSCSB 02/09/2026 Meeting at 5 (A207) (reminder from the Board's Executive Director to Board Members that denial of an application needs clear reasons). So the only outcome of the October 12 meeting

---

[6] Neither a Board Member's statement to the media, nor the Attorney General's allegations in the voluntary dismissal of his own lawsuit, alter the actual, legal function of the Board's vote on October 12. ECF No. 26 at 13–14.

was that the status quo remained: Ben Gamla's application remains denied for its religious character.

Third, a consent decree or injunction is not at issue in this case.[7] ECF Nos. 13 at 7; 15 at 8; 26 at 19. Far from an injunction resulting from a settlement or agreement of the parties, the district court's preliminary injunction was the result of adverse briefing—with two parties arguing in favor of the preliminary injunction and two parties arguing against—and oral argument. The sharp presentation of the constitutional issues allowed the district court to make an informed, reasoned decision. And the presence of those same parties—Ben Gamla, the Board, and both Intervenors—as parties to this appeal will assist the Court in doing the same.

Kaiman Intervenors cite *Haitian Refugee Center v. Civiletti*, 614 F.2d 92, 93 (5th Cir. 1980), and *Cox v. Community Loans of America, Inc.*, No. 12-11599, 2013 WL 7861816, at *1 (11th Cir. Jan. 18, 2013), to support dismissal. ECF No. 26 at 20–21. Both are factually distinguishable. In *Haitian Refugee Center*, the defendants appealed from an agreed-upon order temporarily enjoining them from

---

[7] Both Intervenors' reliance on *Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Associates, Inc.*, 488 F.3d 88 (2d Cir. 2007), is irrelevant. ECF Nos. 15 at 8; 26 at 21. The consent injunction in that case was adopted pursuant to a settlement agreement and incorporates the settlement agreement's exact language. Kaiman Intervenors' reliance on *Montez v. Hickenlooper*, 640 F.3d 1126, 1131 (10th Cir. 2011), and *Brown v. Farmers Insurance Co.*, 308 F.App'x 303, 306 (10th Cir. 2009), fail for the same reason—those cases involved a settlement agreement of the parties. ECF No. 26 at 19–20.

engaging in the challenged deportation practices and procedures to preserve the status quo. 614 F.2d at 93. And in *Cox*, the defendants appealed from an order enjoining them from repossessing plaintiffs' vehicles during the litigation—after the defendants agreed not to do so at the preliminary injunction hearing. 2013 WL 7861816, at *1. Here, though the Board agreed with Ben Gamla on the constitutional issues, it still engaged in the challenged action. And Ben Gamla's application remains denied. *Windsor*'s dual track procedure—denying a benefit, while disclaiming the constitutionality of doing so—is the critical differentiating factor.

## CONCLUSION

The Court should deny the Attorney General's motions to intervene and to dismiss and Kaiman and Moore Intervenors' motions to dismiss.

Respectfully submitted this 23rd day of November, 2026.

*/s/ Anthony J. Ferate*
Anthony J. Ferate
FERATE PLLC
4308 Echohollow Trail
Edmond, OK, 73025
(202) 486-7211
aj@ferate.us

Hiram S. Sasser
Holly M. Randall
Erin E. Smith
FIRST LIBERTY INSTITUTE

2001 W. Plano Parkway, Suite 1600
Plano, TX, 75075
hsasser@firstliberty.org
hrandall@firstliberty.org
esmith@firstliberty.org

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) this document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,848 words, excluding the parts of exempted by Fed. R. App. P. 32(f); and (2) this document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), 32(a)(6), because this document has been prepared in a proportionally space typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Anthony J. Ferate*
Anthony J. Ferate

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made; and (2) the electronic submission was scanned via Microsoft Defender and is virus free.

*/s/ Anthony J. Ferate*
Anthony J. Ferate

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, and that all parties to this litigation are represented by attorneys.

*/s/ Anthony J. Ferate*
Anthony J. Ferate