**No. 26-6166**

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., AND PETER DEUTSCH,

*Plaintiffs-Appellees*,

v.

BRIAN T. SHELLEM, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE OKLAHOMA STATEWIDE CHARTER SCHOOL BOARD, ET AL.,

*Defendants-Appellants*,

and

DANIEL KAIMAN, ET AL.,

*Intervenor Defendants-Appellees*,

and

CRICKET MOORE, ET AL.,

*Intervenor Defendants-Appellees*.

# PLAINTIFFS-APPELLEES' CONSOLIDATED RESPONSE TO MOTIONS TO DISMISS

Robert G. McCampbell
David R. Herber
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500

Daniel L. Chen
Eric S. Baxter
Eric C. Rassbach
Benjamin A. Fleshman
Hannah S. Wander
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*dchen@becketfund.org*

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
BACKGROUND .......... 3
A. Factual Background .......... 3
1. Plaintiffs apply to operate a religious charter school. .......... 3
2. The *Drummond* decision .......... 4
3. The Board denies Ben Gamla's application based on *Drummond*. .......... 5
B. Procedural History .......... 7
C. Recent Developments .......... 10
ARGUMENT .......... 13
I. This Court should deny Drummond's motion to intervene and strike his nonparty motion to dismiss. .......... 13
II. The appeal is not moot. .......... 16
III. This appeal presents a justiciable case or controversy. .......... 18
IV. Adverseness is a prudential concern and can be addressed by appointing *amicus* counsel to argue the merits. .......... 24
CONCLUSION .......... 26
CERTIFICATE OF COMPLIANCE .......... 28
CERTIFICATE OF DIGITAL SUBMISSION .......... 29
CERTIFICATE OF SERVICE .......... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bronson v. Swensen*,
500 F.3d 1099 (10th Cir. 2007) .......... 14

*Civ. Serv. Comm'n v. Gresham*,
653 P.2d 920 (Okla. 1982) .......... 16, 17

*Clyma v. Sunoco, Inc.*,
594 F.3d 777 (10th Cir. 2010) .......... 26

*Eaves v. Polis*,
167 F.4th 1304 (10th Cir. 2026) .......... 18

*Horry v. City of Tulsa*,
83 P.3d 896 (Okla. Civ. App. 2003) .......... 16, 17

*INS v. Chadha*,
462 U.S. 919 (1983) .......... 19, 21-22

*Kane County v. United States*,
928 F.3d 877 (10th Cir. 2019) .......... 13, 14

*Oklahoma Statewide Charter Sch. Bd. v. Drummond*,
145 S. Ct. 1134 (2025) .......... 5

*Oklahoma Statewide Charter Sch. Bd. v. Drummond*,
605 U.S. 165 (2025) .......... 5

*Pub. Serv. Co. v. Barboan*,
857 F.3d 1101 (10th Cir. 2017) .......... 13

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 18, 20, 24, 25

*St. Isidore of Seville Catholic Virtual Sch. v. Drummond*, 145 S. Ct. 1134 (2025) ........ 5

*Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1 (Okla. 2024) ........ 4

*United States v. Moon Seals*, 190 F.4th 1192 (10th Cir. 2026) ........ 26

*United States v. Windsor*, 570 U.S. 744 (2013) ........ 18, 19, 20, 21, 23, 24, 25

*Wilson v. Glenwood Intermountain Props., Inc.*,, 98 F.3d 590 (10th Cir. 1996) ........ 9, 10

**Statutes**

Okla. Stat. tit. 70, § 3-132.1 ........ 10, 16, 17

Okla. Stat. tit. 70, § 3-134 ........ 17

Okla. Stat. tit. 70, § 3-136 ........ 3

**Other Authorities**

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 02/09/26* (Feb. 9, 2026) ........ 5

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting 03/09/2026* (Mar. 9, 2026) ........ 6-7

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 10/12/26* (Oct. 12, 2026) ........ 10

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 10/23/2026 – Part 2* (Oct. 23, 2026) ........ 12

Nuria Martinez-Keel, *Oklahoma board plans revote on Jewish charter school*, Oklahoma Voice (Oct. 21, 2026) ........ 17

Nuria Martinez-Keel, *Oklahoma state board again rejects Jewish charter school in 'shocking' vote*, Oklahoma Voice (Oct. 12, 2026) ..... 11

Addison Kliewer & Olivia Hickey, *Oklahoma Statewide Charter School Board votes to appeal federal ruling on proposed Jewish school*, KOCO 5 News (Oct. 23, 2026) ..... 12, 17

## INTRODUCTION

After their charter-school application was rejected due to their school's religious character and mission, Plaintiff-Appellees National Ben Gamla Jewish Charter School Foundation, Inc. and Peter Deutsch sued the Oklahoma Statewide Charter School Board and Attorney General Gentner Drummond for violating the Free Exercise Clause.

Though the Board was sympathetic to Ben Gamla's application, a statutory nonsectarian requirement—as well as an Oklahoma Supreme Court ruling from a previous lawsuit—required the Board to deny Plaintiffs' application. At the district court, Drummond successfully moved to be dismissed from this case, claiming he had no role or interest in enforcing the Oklahoma Charter Schools Act (OCSA).

Meanwhile, the Board agreed with Ben Gamla that the prohibition on religious charter schools is unconstitutional. So, the district court granted intervention to two groups of private citizens to defend it. After full and extensive briefing on standing and the merits, the district court granted Ben Gamla's motion for a preliminary injunction. The Board then appealed to further clarify its rights under the dueling state and federal orders. Both sets of Intervenors, however, strategically declined to cross-appeal.

After this appeal was noticed, however, Drummond and the Intervenors all sprang back into action. Drummond—despite having previously persuaded the district court he had no role in enforcing the OCSA or

overseeing charter-school applications—discovered a late-breaking "interest … in the Oklahoma Charter Schools Act being applied as the Legislature wrote it." He therefore seeks to intervene on appeal, but only for the limited purposes of seeking dismissal and preventing further review of the Oklahoma Supreme Court's decision. Suffice it to say, if Drummond had no interest when this case was before the district court, he has no interest now, and he has not even tried to carry his heavy burden of demonstrating he is entitled to intervene on appeal. For that reason, his nonparty motion to dismiss should be stricken.

For their part, the two groups of Intervenors argue, among other things, that this appeal must be dismissed because there is no justiciable case or controversy. But the Supreme Court has repeatedly rejected that exact argument, in cases such as *INS v. Chadha, United States v. Windsor*, and *Seila Law LLC v. Consumer Financial Protection Bureau*. And, as even the Board concedes, it denied Ben Gamla's application due to its religious mission and the Oklahoma Supreme Court's binding decision in *Drummond*. That concrete, religion-based denial means that this case is justiciable.

Finally, the Intervenors suggest that this appeal should be dismissed because there is no adverseness between Ben Gamla and the Board. But the absence of a party defending the nonsectarian requirement is not mere happenstance. It is the result of Intervenors' calculated decision not to appeal the district court's preliminary injunction, in the hopes that

doing so would thwart further consideration of the important constitutional questions at stake. Any questions concerning adverseness are prudential, and this Court can easily resolve them by appointing a non-party *amicus* to argue the merits, as the Supreme Court and this Court have repeatedly done.

This Court should therefore deny the motions to dismiss.

## BACKGROUND

### A. Factual Background

#### 1. Plaintiffs apply to operate a religious charter school.

This litigation concerns a provision of the OCSA that requires all Oklahoma charter schools to be "nonsectarian in [their] programs, admission policies, employment practices, and all other operations." Okla. Stat. tit. 70, § 3-136(A)(2).

In December 2025, Plaintiff Peter Deutsch, a former Democratic Congressman, founded the National Ben Gamla Jewish Charter School Foundation, Inc. ("Ben Gamla") in Oklahoma. Shortly after it was formed, Ben Gamla applied to operate a religious charter school, the Ben Gamla Jewish Charter School.

As part of Ben Gamla's distinctive religious mission, students will receive instruction in Jewish religion, culture, and values. ECF No. 11-2

¶¶ 26, 30; *id.*, Ex. 2-A at 4.[1] Ben Gamla's application explained that while also furthering its religious mission, the School will promote academic excellence using best practices in general and virtual education. ECF No. 11-2, Ex. 2-A at 4. In its application, Ben Gamla also explained that it will abide by and satisfy all of the OCSA's requirements, except the requirement that Ben Gamla abandon its religious identity. ECF No. 11-2 ¶ 36.

### 2. The *Drummond* decision

In 2023, the predecessor to the Statewide Charter School Board approved an application for a Catholic charter school, St. Isidore of Seville Catholic Virtual School. *Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 6-7 ¶ 5 (Okla. 2024). But upon taking office, Attorney General Drummond sought a writ of mandamus from the Oklahoma Supreme Court to bar St. Isidore's charter, claiming that chartering St. Isidore violated the OCSA, the Oklahoma Constitution, and the federal Constitution. *Id.* at 7 ¶ 8.

In a split decision, the Oklahoma Supreme Court agreed. *Id.* It concluded that—by contracting with the state to provide a "*free public* education"—St. Isidore became a state actor, and thus, the Free Exercise Clause did not protect St. Isidore. *Id.* at 12 ¶ 30, 14-15 ¶¶ 42-44.

---

[1] "ECF No." citations are to the district court docket for this case. "Dkt." Citations are to the Tenth Circuit docket for this case. "A" citations are to the appendix of the Kaiman Intervenors' motion to dismiss. Dkt. 26.

St. Isidore and the Board petitioned for writs of certiorari, and the Supreme Court granted review. *St. Isidore of Seville Catholic Virtual Sch. v. Drummond*, 145 S. Ct. 1134 (2025); *Okla. Statewide Charter Sch. Bd. v. Drummond*, 145 S. Ct. 1134 (2025). But after a recusal from Justice Barrett, the Supreme Court affirmed the Oklahoma Supreme Court in a split 4-4 *per curiam* decision, leaving the constitutional question unresolved. *Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025).

**3. The Board denies Ben Gamla's application based on *Drummond*.**

On February 9, 2026, the Board held a hearing and rejected Ben Gamla's application based on the *Drummond* decision. During the hearing, one Board member remarked that the Board's "hands are tied" by the "writ of mandamus from the state Supreme Court," so any other potential issues with Ben Gamla's application were "immaterial to the discussion." ECF No. 11-1 ¶ 3; Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 02/09/26*, at 2:20:03-18 (Feb. 9, 2026), https://www.youtube.com/watch?v=_CxrYka29tY. The Board member also noted that other charter schools, specifically one focused on Native American culture, "[also] had essentially a cultural-spiritual component embedded within it to honor the culture and spirituality of Native Americans, and the school operated that way, and nobody raised any concerns at that point." *Id.* at 2:20:51-2:21:39. He explained that he didn't think

Ben Gamla was "materially different," and he was "troubled" by that unequal treatment. *Id.*

Other Board members agreed. One stated that "our hands are tied most definitely," but that "[t]he decision today won't be because they are not a good candidate or qualified or a school that I think would bring tremendous assets to the State of Oklahoma." *Id.* at 2:21:49-2:22:18. Another Board member similarly said, "Regardless of this school's reputation or whatever strengths that it has, we have to follow the law and right now the law says no." *Id.* at 2:29:44-52.

The Board then unanimously denied the application. *Id.* at 2:30:20-2:31:03. The Board issued a press release stating that the Board's "decision primarily was based on binding legal precedent established by the Oklahoma Supreme Court in 2024, which held that a religious charter school would be unlawful under the state's Constitution." ECF No. 11-1 ¶ 5; *id.*, Ex. 1-A at 1. On February 13, 2026, the Board formally denied the charter, citing other minor deficiencies, as well as the Oklahoma Supreme Court's decision in *Drummond*. ECF No. 11-2 ¶ 40; *id.*, Ex. 2-B.

On February 27, Ben Gamla filed a revised application with the Board, curing all deficiencies noted by the Board, except its noncompliance with the nonsectarian requirement. At its regular meeting on March 9, the Board discussed the revised application. The Board's staff noted that Ben Gamla "was found to have sufficiently resolved 9 out of the Board's 10 concerns." ECF No. 11-1 ¶ 4; Okla. Statewide Charter Sch. Bd., *OKSCSB*

*Meeting 03/09/2026*, at 1:10:08-1:11:26 (Mar. 9, 2026), https://www.youtube.com/watch?v=6hd17f_KoIw. But "there is one item—the requirement to be nonsectarian—that the revised application does not resolve." *Id.*

The Board therefore voted unanimously to deny Ben Gamla's application based solely on the religious character of the proposed School. *Id.* at 1:16:20-1:19:20. On March 10, Defendant Lusnia sent an official letter formally denying Ben Gamla's application due to the school's religious character. ECF No. 11-2 ¶ 43 & Ex. 2-D.

**B. Procedural History**

On March 24, Plaintiffs filed this lawsuit, suing the Board and Attorney General Drummond for denying their charter application based on the nonsectarian requirement and the *Drummond* decision. ECF No. 1. Three days later, Ben Gamla moved for a preliminary injunction to permit it to participate in Oklahoma's charter school program without disavowing its religious character. ECF No. 11 at 9.

In response, Drummond filed a motion to dismiss, arguing he had "no role in the administration of the [OCSA], the processing or denial of charter school applications, or the enforcement of the OCSA's nonsectarian requirement." ECF No. 52 at 1. Drummond further claimed that he "exercises no control over the Board's application decisions" and "[h]as [n]o [c]onnection to the [e]nforcement of the OCSA's [n]onsectarian

[r]equirement." *Id.* at 3. He therefore asked the district court to dismiss him from the case.

Drummond was successful. The district court granted Drummond's motion to dismiss, holding—based on Drummond's representations—that he had "an inability to enforce the Oklahoma Charter Schools Act" and therefore "[could] not be named as a defendant in this case." ECF No. 90 at 5; *see id.* at 6 (Drummond lacked "'supervisory power' over the Board"). As a result, Drummond was dismissed from this case and, per his specific request, his name was removed from the caption of this case. *Id.* at 1, 9.

Meanwhile, two separate sets of parties sought intervention. ECF Nos. 15, 66. The first group—the "Kaiman" Intervenors, a group of Oklahoma taxpayers—argued they had a protectable interest in ensuring public funds did not flow to religious charter schools. ECF No. 15. The second group—the "Moore" Intervenors, who are Oklahoma families with children in charter schools—argued they had an interest in ensuring that charter schools be designated as government-run public schools. ECF No. 66. The district court permitted intervention so both sets of parties could defend the OCSA's nonsectarian requirement. To that end, the Kaiman Intervenors and the Moore Intervenors opposed Plaintiffs' motion for a preliminary injunction on standing and merits grounds. ECF Nos. 62-1, 94.

On September 24, the district court granted Plaintiffs' motion for a preliminary injunction. ECF No. 121. It began by rejecting the Kaiman Intervenors' standing arguments, which claimed that Plaintiffs lacked standing because their application allegedly contained other deficiencies that would disqualify Plaintiffs from obtaining a charter contract. *Id.* at 9. The district court explained that this "misconstrues the underlying injury in fact" because "Plaintiffs claiming discrimination in the denial of a benefit need not show they would have obtained the benefit in the absence of the discrimination to establish standing; it is enough to show the discrimination deprived them of the ability to compete for the benefit on an equal footing." *Id.* (quoting *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 593 (10th Cir. 1996)).

The district court then addressed the merits. It held that the OCSA's "nonsectarian requirement 'expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character,'" thereby "violat[ing] the Free Exercise Clause." *Id.* at 13. Intervenors argued that the Free Exercise Clause didn't apply, as Oklahoma charter schools were either governmental entities, state actors, or public schools. *Id.* at 14. But the court ruled otherwise on each argument, and held that as private actors, Oklahoma charter schools were protected by the Free Exercise Clause. *Id.* at 14-29. Accordingly, it granted Plaintiffs a preliminary injunction and required

Board Defendants to process Plaintiffs' charter school application without enforcing the nonsectarian requirement. *Id.* at 30.

**C. Recent Developments**

Following the district court's order granting a preliminary injunction, the Board scheduled an October 12 hearing on Plaintiffs' charter application. Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 10/12/26* (Oct. 12, 2026), https://www.youtube.com/watch?v=Z3whZ2HIofs.

Following an hour-long executive session to discuss Ben Gamla's application, the Board reconvened for a public vote. *Id.* at 2:06:40. Though a 4-3 majority voted to grant Ben Gamla's application, *id.* at 2:07:58-2:09:15, "an affirmative vote of at least five members shall be required for the Board to take any final action." Okla. Stat. tit. 70, § 3-132.1(H). Thus, the Board failed to take any final action on Ben Gamla's application. And, unlike the two prior votes where Ben Gamla's application was formally denied, the Board never sent Ben Gamla a letter explaining the October 12 vote.

Immediately following the vote, Chairman Shellem directed reporters covering the vote to discuss the results with the Board's counsel. *OKSCSB Meeting: 10/12/26, supra*, at 2:09:39-2:09:58. After moving on to other matters, Chairman Shellem returned to the topic of the Board's vote, commenting, "We are opening ourselves up to a truckload of litigation by just not even authorizing" and "now, we've put ourselves in, I would say, in a bit of a quagmire." *Id.* at 2:12:00-14. The Board then

proceeded to discuss other matters on the agenda. Following the hearing, media outlets reported that the Board's own counsel "suggested [Ben Gamla] could try to have the board held in contempt of court, given the vote seemed to contravene the federal judge's decision." Nuria Martinez-Keel, *Oklahoma state board again rejects Jewish charter school in 'shocking' vote*, Oklahoma Voice (Oct. 12, 2026), https://perma.cc/TB4M-VFXB.

In the midst of the litigation and Board votes, Plaintiffs sought to recruit employees and families interested in attending Ben Gamla's religious charter school. However, given the possibility that the litigation or collateral lawsuits could shutter the school with little notice to families, Plaintiffs made the difficult decision to seek to enroll a smaller inaugural class. The Kaiman Intervenors and Drummond learned of Plaintiffs' smaller projected enrollment and argued that this justified the denial of Ben Gamla's application. A783-87.

Following the October 12 hearing, Plaintiffs learned that the Board was holding yet another vote on its application, set for October 23. But more importantly, Plaintiffs also learned that the Board would not appeal the district court's preliminary injunction. That latter decision presented an existential crisis because without an appeal, the cloud of litigation overhanging Plaintiffs' school would continue indefinitely, and there would be no viable path to overturn the *Drummond* decision and ensure that any school would be free from state court collateral attacks based on *Drummond*.

Given the necessity of challenging the *Drummond* decision, on October 20, Plaintiffs submitted a public letter to the Board. A812-13. The letter explained that without an appeal and additional clarity given the split in state and federal authority, Ben Gamla could not operate for long. A813. Ben Gamla therefore pleaded with the Board to appeal the preliminary injunction. *Id.*

On October 22, the day before the Board's vote, Attorney General Drummond issued an opinion letter legally requiring Board members to abstain from voting on Ben Gamla's application. A815-25. At the October 23 hearing, the Board thus declined to vote on Ben Gamla's application, and instead unanimously voted to appeal the preliminary injunction. Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 10/23/2026 – Part 2* (Oct. 23, 2026) at 3:59-5:07, https://www.youtube.com/live/TE-eoBUY2xE. That same day, the Board timely filed its notice of appeal, with counsel again noting that failure to do so could expose the Board to contempt. Dkt. 1; Addison Kliewer & Olivia Hickey, *Oklahoma Statewide Charter School Board votes to appeal federal ruling on proposed Jewish school*, KOCO 5 News (Oct. 23, 2026), https://perma.cc/QPM3-78MJ. The Kaiman Intervenors and Moore Intervenors declined to cross-appeal by the deadline.

On November 6, Drummond, despite having successfully obtained dismissal from the case below, filed a motion "for leave to appear as a party, as intervenor in support of the judgment," as well as a non-party motion

to dismiss the appeal for lack of appellate jurisdiction. Dkt. 13-1 at 5, 10. The Kaiman and Moore Intervenors, despite deciding not to appeal the decision below, followed shortly thereafter with their own motions to dismiss. Dkts. 15-1, 26.

## ARGUMENT

### I. This Court should deny Drummond's motion to intervene and strike his nonparty motion to dismiss.

After having successfully moved below to dismiss all claims against him, Drummond now wants back in on appeal. He has filed a motion to dismiss the appeal, but under Tenth Circuit Rule 27.3(A), only parties may do so. As a non-party, Drummond must first seek to intervene. But to intervene, he must show he satisfies Rule 24(a)'s requirements, which he has not even attempted to do.

This court "evaluate[s] motions to intervene on appeal" based on the same well-known requirements under Rule 24(a). *Pub. Serv. Co. v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017). Under Rule 24(a), an applicant bears the burden of demonstrating that intervention is warranted. *Kane County v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). "[W]hen an applicant has not sought intervention in the district court," it is permitted "on appeal only in an exceptional case for imperative reasons." *Barboan*, 857 F.3d at 1113 (cleaned up).

Drummond makes no argument as to why this is an exceptional case and why it is imperative for him to join now. Moreover, if the failure to

intervene below prejudices a motion to intervene on appeal, this is an *a fortiori* case. Drummond aggressively moved below to be dismissed, demonstrating he has no interest in this case, as he himself argued. ECF No. 52 at 1, 3.

Most importantly, as the applicant seeking intervention, Drummond bears the burden of demonstrating that he satisfies Rule 24(a). *Kane County*, 928 F.3d at 889. But nowhere in his brief does he so much as mention (let alone argue) the four relevant factors: timeliness, an interest in the action, impairment of that interest, and a lack of adequate representation by existing parties. *Id.* And he sets forth few relevant facts to allow this Court to make the necessary findings. As a result, he waived any argument, and his request to intervene should be denied and his motion to dismiss stricken. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

Even if his arguments were properly presented, Drummond would still fail to satisfy Rule 24(a). As to timeliness and his interest in this litigation, timeliness is assessed based on when an applicant knew or should have known about his interest in this case. *Kane County*, 928 F.3d at 890-91. Here, Drummond has not asserted an interest in this case that is distinct from the interest he already had when he sought dismissal below.

Drummond claims two interests: (1) "the integrity of a federal order entered against a state agency at that agency's request," and (2) "the Oklahoma Charter Schools Act being applied as the Legislature wrote it." Dkt. 13-1 at 5. But Drummond already knew about or disclaimed those interests when he was a party at the district court. There, it was already clear the Board did not intend to defend the law, so Drummond's request for intervention now is untimely. And as to his interest in enforcing the OCSA "as the Legislature wrote it," Drummond argued below that he has "no role in the administration of the [OCSA]." ECF No. 52 at 1. He cannot have it both ways. Allowing him to now claim an interest he repudiated below would prejudice existing parties, who participated in proceedings while Drummond was dismissed.

Finally, Drummond's position is adequately represented by the existing parties. Both the Kaiman and Moore Intervenors have also filed motions to dismiss on largely the same standing grounds, so any argument from Drummond is duplicative and unnecessary.[2] Thus, even if this Court were to reach the substance of Drummond's request for intervention, it should deny it nonetheless and strike his motion to dismiss.

[2] Plaintiffs do not object to Drummond's request that his motion be treated as an amicus brief. Dkt. 13-1 at 5. But again, Drummond's arguments are largely duplicative. *See, e.g.,* Dkts. 15-1, 26.

## II. The appeal is not moot.

Standing alone, the Kaiman Intervenors argue that this appeal is moot because on October 12, 2026, the Board supposedly issued a final decision rejecting Ben Gamla's application for "nonreligious reasons." Dkt. 26 at 12. That is simply false. The Board's October 12 vote was taken in response to the district court's order enjoining the OCSA's nonsectarian requirement. Because the Board had previously denied Ben Gamla's application based solely on its religious mission, ECF No. 11-2 ¶ 43; *id.*, Ex. 2-D, the Board had to revote without considering that element. And with seven of the Board's nine members participating, the majority voted 4-3 to grant the application. But because "any final action" by the Board requires "an affirmative vote of at least five members," Okla. Stat. tit. 70, § 3-132.1(H), the Board failed to meet the statutory threshold.

Failure to meet the minimum vote requirement, however, did not mean that the three dissenting votes—even assuming they shared a valid nonreligious reason—somehow became the final action of the Board. Rather, the dissenters too would have needed five votes to officially deny Ben Gamla's application for a nonreligious reason. Failure to meet the statutory vote requirement meant only that "no final valid decision was reached." *Civ. Serv. Comm'n v. Gresham*, 653 P.2d 920, 927 (Okla. 1982); *see also Horry v. City of Tulsa*, 83 P.3d 896, 897 (Okla. Civ. App. 2003) ("no decision was rendered"). Indeed, the text of the OCSA is plain and

unambiguous: "an affirmative vote of at least five members shall be required for the Board to take any final action." Okla. Stat. tit. 70, § 3-132.1(H). Because no side garnered the necessary five votes, no final decision was reached.

That is consistent with the Board counsel's own statements and the Board's own subsequent action in scheduling a new vote when more members could be present. Nuria Martinez-Keel, *Oklahoma board plans revote on Jewish charter school*, Oklahoma Voice (Oct. 21, 2026), https://perma.cc/VY6P-XXH7. The failure to reach the statutory vote requirement was essentially an adjournment that would later allow the Board to again try reaching the five-vote threshold necessary for any final action. *Gresham*, 653 P.2d at 927 ("final, and valid, decision was reached" with later, expanded vote); *Horry*, 83 P.3d at 897 (similar analysis). And when that later vote was subsequently cancelled in response to Drummond's opinion letter claiming no vote was permissible, A824, the Board's own counsel warned that failure to act—whether voluntary or not—could expose the Board to "contempt," not that the Board had already rejected Ben Gamla's application for nonreligious reasons. Kliewer & Hickey, *Oklahoma Statewide Charter School Board votes to appeal federal ruling on proposed Jewish school*, KOCO 5 News.

Indeed, had the Board actually denied Ben Gamla's application, it would have been required to provide Ben Gamla with a written explanation of the denial. *See* Okla. Stat. tit. 70, § 3-134(E)(3). But unlike the two

prior votes where the Board actually did deny Ben Gamla's application, the Board provided no formal letter informing Ben Gamla of any decision coming out of the October 12 vote.

One Board member's dubious statements, Dkt. 26 at 13 (citing A818 n.5), and Drummond's wishful thinking, *id.* at 13-14 (citing A806-07, A809) are not Board action. The only final action from the Board is the March 9 denial of Ben Gamla's application because of its religious mission. No subsequent denial for "nonreligious reasons" has been made. Thus, the Kaiman Intervenors, as the party asserting mootness, have come nowhere close to "satisf[ying] the heavy burden" of establishing mootness. *Eaves v. Polis*, 167 F.4th 1304, 1310 (10th Cir. 2026). The appeal is not moot.

**III. This appeal presents a justiciable case or controversy.**

Intervenors next argue that this case should be dismissed because Ben Gamla and the Board agree on the merits of the constitutional questions raised. "That contention, however, is foreclosed by *United States v. Windsor*" and other Supreme Court precedent. *Seila Law LLC v. CFPB*, 591 U.S. 197, 212 (2020). Indeed, the Supreme Court has repeatedly held that "a lower court order that presents real-world consequences for the Government and its adversary suffices to support Article III jurisdiction—even if 'the Executive may welcome' an adverse order that 'is accompanied by the constitutional ruling it wants.'" *Id.* (quoting *United States v. Windsor*, 570 U.S. 744, 758 (2013)).

For example, in *INS v. Chadha*, one house of Congress ordered the Immigration and Naturalization Service to deport Chadha through special legislation. 462 U.S. 919, 926-27 (1983). Chadha challenged the law's constitutionality. *Id.* at 928. INS "agreed with Chadha's position before the Court of appeals and joined him in arguing that [the statute] is unconstitutional." *Id.* The Ninth Circuit ruled for Chadha, and INS appealed to the Supreme Court. *Id.* The Supreme Court held that, despite the agreement among the parties on the constitutional question, there was appropriate adverseness because "INS was sufficiently aggrieved by the Court of Appeals decision prohibiting it from taking action it would otherwise take" to comply with Congress' instructions. *Id.* at 930, 939. INS's aggrieved status was "not altered by the fact that the Executive may agree with the holding that the statute in question is unconstitutional." *Id.* at 931.

The Court reached the same conclusion in *Windsor*. There, Windsor sought a refund for a tax she was required to pay because the federal Defense of Marriage Act prohibited the government from legally recognizing her same-sex marriage. *Windsor*, 570 U.S. at 752-55. As in *Chadha*, the government "agree[d] with Windsor's legal contention" even "before the District Court entered its judgment." *Id.* at 756. A court-appointed amicus argued that standing was absent "once the President agreed with Windsor's legal position and the District Court issued its judgment," as "the parties were no longer adverse." *Id.* But the Supreme

Court rejected that argument, holding that the government "retain[ed] a stake sufficient to support Article III jurisdiction on appeal" because the district court's order imposed "real and immediate" consequences for the government. *Id.* at 757-58. Because the government would need to reimburse Windsor—but had not yet done so—there was still sufficient adverseness to proceed on appeal. *Id.* at 758.

Most recently, the Supreme Court reinforced this conclusion in *Seila Law*. There, a law firm subject to an investigative demand from the Consumer Financial Protection Bureau (CFPB) argued that the agency was unconstitutionally structured. *Seila Law*, 591 U.S. at 208. At the Supreme Court, the United States changed its position and agreed that the CFPB's structure violated the Constitution's separation of powers. *Id.* at 209. The Supreme Court nonetheless granted certiorari and appointed an amicus to defend the judgment in favor of the CFPB. *Id.* And the Supreme Court rejected the argument that "the parties agree on the merits of the constitutional question and the case therefore lacks 'adverseness'" as "foreclosed by *United States v. Windsor*." *Id.* at 212.

This case is no different than *Chadha*, *Windsor*, and *Seila Law*. As in *Chadha*, the Board is bound to follow both the OCSA and the Oklahoma Supreme Court's decision in *Drummond*, both of which require the Board to exclude Ben Gamla because of its religious identity. But the Board now has a countervailing district court order forbidding it from applying the nonsectarian requirement against Ben Gamla. Caught in this catch-22 of

conflicting orders, the Board is now forbidden from taking steps that it "would have taken were it not for [the district court's] decision." *Chadha*, 462 U.S. at 930. And, as in *Windsor*, the district court's order requires the Board to expend resources it would not otherwise expend during the next phases of the charter school approval process. And just as importantly, the Board has *not* voted to approve Ben Gamla's application even after the district court's order—just as the federal government refused to reimburse Windsor despite adverse judgments below.[3] Thus, the district court's order has "real and immediate" consequences for the Board, even if the Board ultimately agrees that those consequences are appropriate. *Windsor*, 570 U.S. at 758.

Intervenors' arguments to the contrary are unavailing. First, Intervenors argue that the Board—which suffered an adverse judgment below—is somehow a prevailing party because it agrees with the district court's constitutional ruling and therefore cannot appeal. Dkt. 13-1 at 5-6; Dkt. 26 at 18-19. But *Chadha* already rejected that argument: the Board is "sufficiently aggrieved by the [district court's] decision prohibiting it from taking action it would otherwise take" as required by Oklahoma law and

---

[3] In *Windsor*, the trial court had entered a final judgment, 570 U.S. at 754, so reimbursing the plaintiff would have mooted the case. Here, the Board's rejection of Ben Gamla's application reinforces the adversity, as refusing to reimburse did in *Windsor*. But even if the Board did grant the application pursuant to the district court's preliminary injunction, the adversity in this case would remain absent compliance with a final order.

the Oklahoma Supreme Court. 462 U.S. at 930. And the Board's "status as an aggrieved party … is not altered by the fact that the Executive may agree with the holding that the statute in question is unconstitutional." *Id.* at 931.

Intervenors and Drummond next analogize the Board's position to entering a consent judgment or a settlement. Dkt. 26 at 19-21; Dkt. 15-1 at 8; Dkt. 13-1 at 7. But of course, no consent judgment or settlement was ever entered in this case. Instead, just as in *Chadha*, the Board separately urged the Court to enter an injunction because the nonsectarian requirement is unconstitutional. *See Chadha*, 462 U.S. at 930 ("Here, INS sought the invalidation of § 244(c)(2) and the Court of Appeals granted that relief.").

*Windsor* is equally apt. There, the United States—at the district court, Second Circuit, and Supreme Court—"did not merely decline to oppose" relief. *Contra* Dkt. No. 13-1 at 6. Rather, at the district court, the United States *affirmatively* argued that "Section 3 of DOMA fails heightened scrutiny, and this Court should deny the motions to dismiss Plaintiff's constitutional claim and grant Plaintiff's motion for summary judgment." Def. United States' Mem. of Law in Resp. to Pl.'s Mot. for Summ. J. at 28, *Windsor v. United States*, 833 F. Supp. 2d 394 (S.D.N.Y. 2012) (No. 10-cv-8435), ECF No. 71. At the Second Circuit, the United States repeated that same argument. Br. for the United States at 45, *Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012) (No. 12-2335), ECF No. 120 ("Section

3 of DOMA is unconstitutional under heightened scrutiny and the judgment of the district court should be affirmed.”). And of course, the Supreme Court held that the United States, which had petitioned the Supreme Court for certiorari, nonetheless had standing despite agreeing with Windsor about DOMA’s unconstitutionality. *Windsor*, 570 U.S. at 756-58.

The Board’s briefing here is on all fours with the United States’ arguments in *Chadha* and *Windsor*. Under those cases, the Board can appeal the adverse judgment against it, even if it ultimately agrees with the constitutional conclusion drawn by the district court. Indeed, an appeal is the only way to resolve the competing court orders applied against it.

Next, Drummond and the Kaiman Intervenors try to distinguish *Windsor*—though neither addresses *Chadha* or *Seila Law*.[4] But each of their distinctions lacks merit. Drummond argues that the Board is not under a “comparable compulsion” as the government in *Windsor*, which was required to refund a tax it was still withholding. Dkt. 13-1 at 8. But that’s wrong. The Board was and is subject to a preliminary injunction requiring it to vote on Ben Gamla’s application without considering or enforcing the OCSA’s nonsectarian requirement, contrary to state law and the Oklahoma Supreme Court’s ruling in *Drummond*.

---

[4] The Moore Intervenors do not even cite *Windsor*, much less *Chadha* or *Seila Law*.

Finally, Drummond and the Kaiman Intervenors argue that the Board has already complied with the district court's preliminary injunction. *Id.* at 8; Dkt. 26 at 23-24. But as explained previously, that's not right either. *See supra* Section II. The Board never reached a conclusive final action on Ben Gamla's application at the October 12 hearing. The only action that garnered five votes from the Board is the March 9 denial of Ben Gamla's application for religious reasons. Thus, nothing in the record supports a finding of good-faith compliance with the district court's order.

Under *Chadha*, *Windsor*, and *Seila Law*, this case presents a justiciable controversy.

## IV. Adverseness is a prudential concern and can be addressed by appointing *amicus* counsel to argue the merits.

Intervenors make two other prudential standing arguments, neither of which warrants dismissal. Prudential standing is not Article III standing, *Windsor*, 570 U.S. at 760, and is therefore "more flexible." *Id.* at 757. Any valid concerns can and should be resolved short of dismissal.

First, the Kaiman Intervenors claim that this case should be dismissed for prudential reasons because it would not "resolve the rights and privileges of hundreds of thousands of persons." Dkt. 26 at 24 (quoting *Windsor*, 570 U.S. at 761-63) (cleaned up). But the Supreme Court in *Seila Law* never bothered with asking whether its decision would impact hundreds of thousands of people. 591 U.S. at 212-13. It instead found that "any prudential concerns with deciding an important legal question in

this posture can be addressed by the practice of entertaining arguments made by an *amicus*." *Id.* at 213 (cleaned up).

Regardless, concerns similar to those in *Windsor* counsel in favor of maintaining the appeal here. Because of *Drummond*, all future religious charter school applicants will need to first individually sue in federal court to obtain relief and be allowed to participate in Oklahoma's program. And the Board needs to have the legal questions in this case fully resolved to avoid several more years of constant litigation from future religious applicants.

The Kaiman Intervenors next suggest that appellate jurisdiction was only appropriate in *Windsor* because a set of intervenors independently appealed the case. Dkt. 26 at 24-25. But the presence of the intervenors helped to "satisf[y] the *prudential* concerns" that litigation include "concrete adverseness" to "sharpen[] the presentation of issues." *Windsor*, 570 U.S. at 760-61 (emphasis added). As explained in *Windsor* and *Seila Law*, this need for concrete adverseness can be met by appointing *amici curiae* who are "prepared to defend with vigor the constitutionality of the legislative act." *Windsor*, 570 U.S. at 760; *see also Seila Law*, 591 U.S. at 209. Indeed, in *Seila Law*, no intervenors defended the law, and the Supreme Court appointed amicus to argue the merits *after* it had granted certiorari. 591 U.S. at 209.

Furthermore, the absence of an intervenor on appeal in this case is no accident. It is the result of the Kaiman and Moore Intervenors' strategic

decision not to cross-appeal. Both sets of Intervenors presumably hope that by moving to dismiss the case instead of appealing, they can thwart consideration of the important constitutional issues at stake in this litigation. Because the lack of adverseness here results from a situation of their own making, these arguments ring hollow.

If this Court has concerns about lack of adverseness in this case, it should follow the Supreme Court in *Seila Law* and appoint an *amicus curiae* to argue in favor of the constitutionality of the OCSA's nonsectarian requirement. Indeed, this Court routinely appoints *amici curiae* to argue in support of positions not taken by the parties. *See, e.g., United States v. Moon Seals*, 190 F.4th 1192, 1196 (10th Cir. 2026)*; Clyma v. Sunoco, Inc.*, 594 F.3d 777, 779 n.2 (10th Cir. 2010). Doing so here would ensure that the important legal issues presented by this case are fully presented and litigated.

## CONCLUSION

This Court should deny Drummond's motion to intervene and strike his motion to dismiss. Furthermore, this Court should find appellate jurisdiction and deny the motions to dismiss this appeal. If necessary, this Court should appoint *amicus curiae* to defend the constitutionality of the OCSA's nonsectarian requirement.

Respectfully submitted,

/s/ *Daniel L. Chen*
Daniel L. Chen
Eric S. Baxter
Eric C. Rassbach
Benjamin A. Fleshman
Hannah S. Wander
THE BECKET FUND
FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW,
Ste. 400
Washington, DC 20006
(202) 955-0095
*dchen@becketfund.org*

Robert G. McCampbell
David R. Herber
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500

*Counsel for Plaintiffs-Appellees*

Dated: November 23, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This brief complies with the word limits set in the Tenth Circuit's orders in this case, Dkts. 37 & 38, because it contains 6,058 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2021 in 14-point font.

Dated: November 23, 2026

/s/ *Daniel L. Chen*
Daniel L. Chen

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. All required privacy redactions have been made;

2. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Defender Antivirus, and according to the program is free of viruses.

Dated: November 23, 2026

/s/ *Daniel L. Chen*
Daniel L. Chen

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 23, 2026

/s/ *Daniel L. Chen*
Daniel L. Chen